[Civ. No. 48933. Second Dist., Div. Five. Mar. 16, 1977.]

BARBARA MATHES, as Administratrix, etc.,
Plaintiff and Appellant, v.
NATIONAL UTILITY HELICOPTERS LTD., p. t.
Defendant and Respondent.

**COUNSEL**

Bodle, Fogel, Julber, Reinhardt & Rothschild, Daniel Fogel, Larry R. Feldman and Joel N. Klevens for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Thomas F. Call, Peter E. Romo, Jr., and Peter J. McBreen for Defendant and Respondent.

## OPINION

**ASHBY, J.**—This is an appeal from an order quashing service of summons on defendant P. T. National Utility Helicopters Ltd. (hereinafter NUH) on the ground that NUH is a foreign corporation over which the court has no jurisdiction. Plaintiff Mathes is administratrix of the estate of Charles Gerner, deceased, who died in a helicopter crash in Indonesia. Plaintiff brought this action[1] against various corporate defendants, alleging causes of action for negligence, breach of warranty, products liability, and failure to provide a safe place of employment. NUH appeared specially to challenge jurisdiction, and, after further facts on the jurisdictional issue were developed by way of interrogatories and depositions, the trial court granted the motion to quash service of summons. Plaintiff appeals.

NUH is an Indonesian corporation with its principal place of business in Singapore. It is engaged primarily in providing helicopter service to oil companies exploring for oil in Indonesia. The stock of NUH is owned 25 percent by an Indonesian entity and 75 percent by defendant Utility Helicopters, Inc. (hereinafter Utility), a California corporation with its headquarters in Long Beach. Utility is a wholly owned subsidiary of defendant Cordon International Corporation (hereinafter Cordon), a Delaware corporation with its headquarters in Los Angeles.

Plaintiff asserts jurisdiction over NUH primarily based upon NUH's purchase of the subject helicopter in California and upon the control over NUH which was exercised by the California-based parent companies.

There are three directors of the NUH board of directors. One is Indonesian; the other two are John Connolly and Robert Victor. Connolly is also president and chairman of the board of Cordon and chairman of the board of Utility. Victor is also senior vice president, secretary, and a director of Cordon and Utility. Connolly and Victor are

---

[1] Plaintiff intervened in a suit brought by Argonaut Insurance Company, the workers' compensation carrier of Gerner's employer, pursuant to Labor Code section 3852.

compensated by Cordon and receive no separate compensation for performing duties as directors of NUH.

Responsibility for the day-to-day operation of NUH's business rests with the NUH general manager in Singapore. NUH does its own hiring locally in Southeast Asia. On occasion, Cordon and Utility employees have assisted NUH in recruiting pilots and mechanics by mentioning names, or by placing an ad in a trade journal, but all résumés were forwarded to Southeast Asia where the hiring decisions were made by NUH. NUH also does its own day-to-day accounting, although Cordon at one time performed this service. NUH has no bank account in California, but the salary checks for its employees are "drawn" in the Cordon accounting and treasurer's office in Torrance, California. NUH purchases its own parts locally in Southeast Asia, unless parts are unavailable there. In such cases NUH purchases parts from a variety of sources around the world, including Utility, from whom NUH has acquired parts "quite frequently."

Cordon is engaged in two general areas of business, cryogenic equipment and aviation services. The aviation services are conducted through subsidiaries. Cordon and Utility have several other aviation subsidiaries besides NUH, which operate in other parts of the world. A Cordon advertising brochure describing the aviation services it provides does not specifically mention the subsidiaries. Utility performs the "administrative function" of all the aviation services of Cordon. In other words, Utility accumulates data on the performance of the aviation services and presents it in a format the (Cordon) management can understand. Richard Fenn, Cordon's group vice president for aviation services, testified that the accounting "monitoring" takes place at the "group" level of Cordon.

The accounting data are reviewed by the Cordon board of directors, including Connolly and Victor, to determine whether they are satisfactory or unsatisfactory from a profit point of view. If the data are unsatisfactory, Connolly receives a recommendation from Fenn as to whether there is a management problem. If so, Connolly and Victor, after consulting with people experienced in the business, and in their capacities as officers of NUH, will replace the general manager. They had changed the general manager three or four times. Of five general managers, three had been from outside Cordon or Utility.

In his capacity as Cordon's group vice president for aviation services, Fenn annually reviews NUH's sales plan and budget of expenses with a view toward adequacy of return, need for additional assets, and feasibility of the plan. The Cordon group people have final say on the plan and the budget. Connolly and Victor sometimes sit in on a portion of such review.

Victor testified that after the Indonesian corporation was formed he went to Indonesia approximately once a year "for a stockholders' meeting or I'd go there for a directors' meeting or I'd stop by when I happened to be in the area just to see our Indonesia partners." Connolly also visited the operation approximately once per year. Connolly and Victor sometimes send someone else to investigate a problem and report back to them. Occasionally NUH employees came to Los Angeles. Once the Indonesian partner came for a Cordon shareholders' meeting. Another time an employee who was on his way home to Europe was interviewed in Los Angeles about accidents and about the general manager. John Barkman, a vice president of Utility, served for several periods as an interim general manager of NUH, and he of course returned to Los Angeles on various occasions.

The helicopter which crashed in Indonesia on December 13, 1973, causing Gerner's death, was owned and operated by NUH. It had been purchased by Utility (as Cordon's designee) from a Norwegian partnership in September 1973. The Norwegian partnership warranted that the helicopter was airworthy in accordance with standards established by the Sikorsky Division of United Aircraft Corporation. NUH purchased the helicopter from Utility in October 1973, simultaneously executing a mortgage in favor of Cordon as mortgagee. NUH agreed to pay Cordon $1,077,779.76 in 96 monthly installments payable in Los Angeles. NUH agreed to maintain the aircraft in airworthy condition. The chattel mortgage also contained a provision that any dispute between NUH and Cordon arising out of or in connection with the mortgage would be arbitrated in Los Angeles. Insurance on the helicopter was obtained through a Los Angeles broker. The helicopter was shipped directly from Norway to Singapore.

NUH has no designated agent for service of process in California, is not authorized to do business in California, owns no real or personal property in California, has no bank accounts in California, and is not listed in the telephone directory.

DISCUSSION

■ A California court may exercise judicial jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. (Code Civ. Proc., § 410.10; *Cornelison* v. *Chaney,* 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) Basically, the state may not exercise jurisdiction over a nonresident unless the quality and nature of the defendant's activity in relation to the state and the particular cause of action make it fair and reasonable to do so. (*Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898 [80 Cal.Rptr. 113, 458 P.2d 57]; *Cornelison* v. *Chaney, supra.*) "Furthermore, unless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity [citation], the particular cause of action must arise out of or be connected with the defendant's forum-related activity. [Citations.]" (*Buckeye Boiler Co.* v. *Superior Court, supra,* at pp. 898-899.)

Plaintiff's argument in favor of jurisdiction is twofold: (1) that her cause of action arises out of or is connected with NUH's California activity in purchasing the subject helicopter here, and (2) that California's jurisdiction over Utility and Cordon extends to NUH because Utility and Cordon dominated and controlled NUH. We reject the first contention but find merit in the second.

■ Plaintiff's cause of action against NUH does not arise out of the purchase of the helicopter by NUH in Los Angeles. NUH's liability, if any, will depend on its operation and maintenance of the helicopter in Indonesia, not its purchase of the aircraft or its contract and chattel mortgage. The mere fact that NUH originally executed purchase documents here does not establish the kind of "substantial nexus" between the cause of action and NUH's California-related activity necessary to support assumption of jurisdiction. (See *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 149.) The purchase of the helicopter and occasional purchase of parts under these circumstances are not sufficient to establish general jurisdiction over NUH. (Cf. *Henry R. Jahn & Son* v. *Superior Court,* 49 Cal.2d 855, 861 [323 P.2d 437].)

However, Cordon and Utility are California-headquartered corporations doing business in this state and subject to California jurisdiction as to all causes of action. ■ "[J]udicial jurisdiction over the parent

corporation will give the state judicial jurisdiction over the subsidiary corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." (Judicial Council Com. to Code Civ. Proc., § 410.10, West's Anno. Cal. Codes at p. 483, citing *Frazier, III* v. *Alabama Motor Club, Inc.* (5th Cir. 1965) 349 F.2d 456.) Ownership of all the stock of the subsidiary and the existence of common directors do not by themselves fuse the parent and subsidiary for purposes of jurisdiction. (*Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U.S. 333 [69 L.Ed. 634, 45 S.Ct. 250]; *Empire Steel Corp.* v. *Superior Court,* 56 Cal.2d 823, 829-831 [17 Cal.Rptr. 150, 366 P.2d 502]; *Watson's Quality Turkey Products, Inc.* v. *Superior Court,* 37 Cal.App.3d 360, 364 [112 Cal.Rptr. 345].) The basic test is whether the one corporation is the alter ego of the other. (See *Westinghouse Electric Corp.* v. *Superior Court,* 17 Cal.3d 259, 274 [131 Cal.Rptr. 231, 551 P.2d 847]; *Sheard* v. *Superior Court,* 40 Cal.App.3d 207, 210-212 [114 Cal.Rptr. 743]; *Watson's Quality Turkey Products, Inc.* v. *Superior Court, supra,* at pp. 365-366; *Brunzell Constr. Co.* v. *Harrah's Club,* 225 Cal.App.2d 734, 744 [37 Cal.Rptr. 659].) In other words, what is required is something "more than that amount of control of one corporation over another which mere common ownership and directorship would indicate." (*Reul* v. *Sahara Hotel* (S.D.Tex. 1974) 372 F.Supp. 995, 998.)

■ We think the record contains uncontradicted evidence[2] which compels the conclusion that Cordon and Utility exercised such control over NUH as to justify treating NUH as a "completely integrated subsidiar[y]" for purposes of jurisdiction. (See *Reul* v. *Sahara Hotel, supra,* 372 F.Supp. 995, 1002; *Frazier, III* v. *Alabama Motor Club, Inc., supra,* 349 F.2d 456, 460.) Cordon's own advertising describing the helicopter service it provides makes no mention of subsidiary corporations and in fact states: "At corporate headquarters, an experienced, professional business management team directs Cordon's international activities to provide the highest standards in service, the best equipment and the highest caliber of personnel." (See *State* v. *MacPherson,* 62 N.M. 308 [309 P.2d 981, 985, 988].)

The employees and officers of Cordon's "aviation services group" exercised direct control over NUH's annual sales plan and budget. Connolly and Victor frequently exercised the power to change NUH's general manager when NUH's accounting data were not satisfactory.

[2]Cf. *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.,* 276 Cal.App.2d 610, 615 [81 Cal.Rptr. 320].

The salary checks for NUH employees were drawn in Cordon's offices in Torrance, California.

NUH argues that when Connolly and Victor made decisions in California they were acting solely in their capacities as directors and officers of Utility and Cordon; that they exercised no more than the ordinary control of parent over subsidiary; and that when they made decisions in their capacities as officers and directors of NUH, they went to Singapore. (See *Pickthall* v. *Anaconda Copper Min. Co.* (S.D.N.Y. 1947) 73 F.Supp. 694, 699; *Hitt* v. *Nissan Motor Company, Ltd.* (S.D.Fla. 1975) 399 F.Supp. 838, 850; *Blount* v. *Peerless Chemicals (P.R.) Inc.* (2d Cir. 1963) 316 F.2d 695, 699-700.) The record does not support this argument. Although Victor testified that he would occasionally go to Singapore for directors' meetings, this does not prove that no decisions as a director of NUH were ever made in California. Connolly testified how he avoided going to Singapore whenever possible and Victor testified that they would often get information about NUH problems by sending someone out there to bring back a report so that Connolly and Victor would be spared the trip. In the circumstances of this case it is impossible to maintain the distinction for which NUH contends, between the different capacities in which Connolly and Victor and other Cordon officers made decisions in California vitally affecting NUH's operations. Connolly and Victor received their compensation from Cordon and received no separate compensation from NUH for acting in their capacities for that corporation. Connolly also admitted confusion on his part as to his duties or different capacities vis-à-vis Cordon and NUH.

We therefore conclude the trial court erred in granting NUH's motion to quash service of summons on ground of lack of jurisdiction.

NUH contends that "[t]he relative convenience of the parties does not favor a California forum." ■ Since the enactment of Code of Civil Procedure section 410.30 specifically authorizing the stay or dismissal of proceedings if "in the interest of substantial justice an action should be heard in a forum outside this state," a distinction should be drawn between the balancing of conveniences for purposes of determining whether California has jurisdiction versus determining whether California should decline to exercise jurisdiction. (Note, 21 Hastings L.J. 1255.) Only in a close case of doubtful minimum contacts necessary to establish jurisdiction will the conveniences be a factor in determining whether it would be fair to exercise jurisdiction over a nonresident. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 150-151; *Martin* v. *Detroit Lions, Inc.,* 32

Cal.App.3d 472, 476 [108 Cal.Rptr. 23]; *Abbott Power Corp.* v. *Overhead Electric Co.,* 60 Cal.App.3d 272, 279-280 [131 Cal.Rptr. 508].) "If, as here, it is clear the state court has jurisdiction, and if the nonresidents's real complaint is that the trial of the lawsuit will cause serious inconvenience, the appropriate remedy is a motion to stay proceedings or to dismiss the action under the doctrine of *forum non conveniens* (Code Civ. Proc., § 410.30) . . . ." (*Martin* v. *Detroit Lions, Inc., supra* at p. 476.)

There may well be many reasons, as NUH contends, why this action should be stayed and plaintiff required first to attempt suit against NUH in Indonesia, but all the facts relevant to that determination can be developed upon an appropriate motion under section 410.30. In the instant case, there is no indication in the record that NUH or the trial court relied upon the doctrine of forum non conveniens in whole or in part. NUH's motion and the trial briefs were directed to the issue of jurisdiction. (See *Martin* v. *Detroit Lions, Inc., supra* at p. 477; *Shoei Kako Co.* v. *Superior Court,* 33 Cal.App.3d 808, 817, fn. 3 [109 Cal.Rptr. 402]. Cf. *Gould, Inc.* v. *Health Sciences, Inc.,* 54 Cal.App.3d 687, 691-692 [126 Cal.Rptr. 726].) If NUH makes a motion pursuant to section 410.30, all the relevant factors (see *Great Northern Ry. Co.* v. *Superior Court,* 12 Cal.App.3d 105, 112-115 [90 Cal.Rptr. 461]) can be considered at that time. (*Martin* v. *Detroit Lions, Inc., supra.*)

The order quashing service of summons is reversed.

Kaus, P. J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1977. Richardson, J., was of the opinion that the petition should be granted.