[No. G001383. Fourth Dist., Div. Three. Oct. 30, 1984.]

ALEX FURDA, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
SEROLOGICAL BIOPSY LABORATORIES et al.,
Real Parties in Interest.

**COUNSEL**

Belli & Sabih and Daniel W. Dunbar for Petitioner.

No appearance for Respondent.

Wyman, Bautzer, Rothman, Kuchel & Silbert, J. Jay Rakow and Andrew M. White for Real Parties in Interest.

## OPINION

**WALLIN, Acting P. J.**—Petitioner Alex Furda seeks a writ of mandate to review an order of the superior court denying his motion to (1) quash service of summons for lack of personal jurisdiction and (2) stay or dismiss the action on the grounds of forum non conveniens and a contractual forum selection clause. We hold the forum selection clause must be given effect and grant the writ.

For a number of years prior to 1981, Furda, a Michigan resident, developed and marketed a secret biochemical biopsy process for the interpretation of diseases and a related computer software package (the Furda process). In 1981, Furda and real parties Derrill Herman, a Canadian resident, and Jeffrey Katke, a California resident, entered into an agreement granting Herman and Katke an exclusive license to market the Furda process in California and four other states.

The agreement provides for Furda to receive royalties equal to 10 percent of gross receipts, with guaranteed minimums ranging from $6,250 in 1982 to $25,000 in 1987. Herman and Katke travelled to Michigan to negotiate and sign the agreement, which includes a forum selection clause providing that any disputes shall be litigated in Michigan.[1]

Herman and Katke established Serological Biopsy Laboratories, a California corporation with its principal place of business in Orange County (SBL), to perform the laboratory services required by the Furda process. Although the agreement required Furda to visit SBL to help establish operations, the parties modified it to allow Furda to send personal training representatives. These representatives visited the California facility twice, overseeing its operations and training employees. Certain employees were flown to Michigan to receive additional training in the Furda process at Furda's Michigan laboratory.

SBL sent 60 to 80 blood samples obtained from California patients to Furda's Michigan laboratory for analysis. Furda transmitted the results to

---

[1]Section 17 of the agreement states: "GOVERNING LAW [¶] Any controversy or claim arising out of or relating to this Agreement which cannot be amicably settled without court action shall be litigated either in a state court for Ingham County, Michigan, or in the U.S. District Court for the Western District of Michigan. Such litigation shall be governed by and in accordance with the laws of the State of Michigan."

SBL by mail and telephone. Additionally, every test conducted at SBL using the Furda process was sent to Furda for his evaluation of its accuracy and quality. In order to synchronize both laboratories, Furda sent patient samples from Michigan to be analyzed at SBL. He also sent promotional material to SBL for dissemination to its doctor customers, and spoke to some of these customers on the telephone.

After two years, the relationship between the parties deteriorated to the point where SBL, Herman and Katke filed a complaint against Furda in Orange County Superior Court for fraud and breach of contract. Specifically, the complaint alleges Furda falsely represented he was a doctor and had performed extensive clinical research studies in the development of the Furda process. It also alleges Furda had been falsifying and fabricating test results and is being investigated by Michigan authorities. It further alleges the Furda process does not correctly identify and interpret diseases or medical conditions and there has never been any computer software package capable of interpreting the results.

Furda was duly served with the summons and complaint pursuant to Code of Civil Procedure section 415.40. He made a special appearance and moved (1) to quash service for lack of personal jurisdiction and (2) to stay or dismiss the action on the grounds of forum non conveniens and the contractual forum selection clause. (Code Civ. Proc., §§ 410.30, 418.10.) The superior court denied his motions, and Furda now brings this proceeding in mandate.

## I

■ We first conclude that Furda has had sufficient contacts with California to subject him to personal jurisdiction here for the limited purpose of real parties' action.

■ California courts may exercise jurisdiction over nonresidents to the broadest extent permitted by the United States and California Constitutions. (Code Civ. Proc., § 410.10.) ■ Some constitutional guidelines were articulated in *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57]: "A defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. [Citations.] Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' [Citations.]" (*Id.,* at

p. 898. See also *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664 [190 Cal.Rptr. 175, 660 P.2d 399]; *Bresler* v. *Stavros* (1983) 141 Cal.App.3d 365 [189 Cal.Rptr. 58].)

*Secrest Machine* involved a nonresident corporate manufacturer of an allegedly defective product. Finding sufficient contacts to establish jurisdiction, the court held engaging in economic activity within the state equates with the requirement of purposeful activity within the state. " '[W]henever the purchase or use of its product within the state generates gross income for the manufacturer and is not so fortuitous or unforeseeable as to negative the existence of an intent on the manufacturer's part to bring about this result' the manufacturer has engaged in economic activity within the state as a matter of commercial actuality. [Citations.]" (*Id.*, at p. 669.)

We see no reason why the test should be different for a nonresident individual marketing services in this state. Furda purposefully entered into a contractual relationship with real parties to market his services to California doctors and patients. This relationship was intended to, and did, produce gross income to Furda. (See *Ratcliffe* v. *Pedersen* (1975) 51 Cal.App.3d 89 [123 Cal.Rptr. 793] finding jurisdiction over a nonresident individual marketing a product in this state.) Furthermore, Furda had direct contact with this state through his representatives who supervised SBL's operations and trained its employees, through mail and telephone communication and through his promotional literature. (Cf. *Abbott Power Corp.* v. *Overhead Electric Co.* (1976) 60 Cal.App.3d 272 [131 Cal.Rptr. 508] and see generally, Judicial Council Comment to Code Civ. Proc., § 410.10, 14 West's Ann. Code Civ. Proc. (1973 ed.) pp. 468-474.)

Accordingly, we hold that Furda's activities within this state were sufficient to subject him to personal jurisdiction for causes of action arising out of his relationship with real parties.[2]

## II

We next consider whether the superior court abused its discretion in denying Furda's motion to stay or dismiss real parties' action on the ground of forum non conveniens and the forum selection clause. As explained below, we hold the existence of a contractual forum selection clause requires a court to decline jurisdiction under Code of Civil Procedure

---

[2]It is not necessary to balance the relative convenience of the parties for purposes of determining California's in personam jurisdiction over Furda. "Only in a close case of doubtful minimum contacts . . . will the conveniences be a factor in determining whether it would be fair to exercise jurisdiction . . . ." (*Mathes* v. *National Utility Helicopters, Ltd.* (1977) 68 Cal.App.3d 182, 191 [137 Cal.Rptr. 104].) This is not a close case.

section 410.30, absent a showing that enforcement would be unfair or unreasonable.

■ The doctrine of forum non conveniens[3] authorizes a court to decline to exercise its jurisdiction in appropriate instances on the ground that the plaintiff has unfairly or unreasonably invoked the jurisdiction of an inconvenient forum. (Judicial Council comment to Code Civ. Proc., § 410.30, 14 West's Ann. Code Civ. Proc. (1973 ed.) p. 490.) It is typically applied to litigation where all of the parties are out-of-state residents and the cause of action arose outside the forum state. ■ Although it is generally held to be an abuse of discretion to dismiss an action on the ground of forum non conveniens where the plaintiff is a resident of the forum state (*Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 742 [59 Cal.Rptr. 101, 427 P.2d 765]), this strict rule does not apply to a stay of the action. (*Dendy v. MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460-461 [187 Cal.Rptr. 95]; *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860 [126 Cal.Rptr. 811, 544 P.2d 947].) " 'The staying court *retains jurisdiction* over the parties and the cause . . . [and] can protect the interests of the California resident pending the final decision of the foreign court.' [Citation.]" (*Archibald v. Cinerama Hotels, supra,* at p. 857.)

■ The enforceability of a forum selection clause is properly raised by a motion to stay or dismiss under Code of Civil Procedure section 410.30, as it is a request to the court to decline jurisdiction. Thus, the motion constitutes a special rather than general appearance, and entitles the moving party to the procedural benefits of Code of Civil Procedure section 418.10 (extensions of time, protection against a default judgment and right to review of an order of denial on mandamus).

■ The California Supreme Court has held that forum selection clauses are given effect in this state, absent a showing that enforcement would be unfair or unreasonable. (*Smith, Valentino & Smith v. Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206].) In *Smith, Valentino & Smith,* a contract between a Pennsylvania corporation doing business in California and a California corporation included a forum selection and choice of law clause requiring each party to litigate any disputes in, and to apply the law of, the other's forum. In affirming the trial court's stay order, the court stated: "While it is true that the parties may not *deprive* courts of their jurisdiction over causes by private agreement [citation], it is readily apparent that courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum. Moreover, although we have acknowledged a policy favoring access to Cal-

---

[3]This doctrine was codified in 1969 in Code of Civil Procedure section 410.30.

ifornia courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in those cases where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum. In so holding we are in accord with the modern trend which favors enforceability of such forum selection clauses. [Citations.]" (*Id.*, at p. 495.)

██ Here, the trial court found the forum selection clause requiring litigation in Michigan adhesive in nature, thus impliedly finding real parties had not freely and voluntarily negotiated away their right to a California forum. However, there is nothing in the record before us to support the finding of adhesion other than the statement by Katke in his declaration that the contract was presented to real parties on a "take-it-or-leave-it" basis. This, without more, does not create a contract of adhesion. ██ "The term signifies a standardized contract, which imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781]; and see *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165].) ██ Even if the clause were adhesive, it would be fully enforceable absent a showing that it was outside the reasonable expectations of the weaker or adhering party or that enforcement would be unduly oppressive or unconscionable. (*Id.*, at p. 820.) Here, there is no evidence indicating this was a standardized contract or the parties were of unequal bargaining strength, and there is no showing of disappointed expectations or unconscionability.

██ Furthermore, we find enforcement of the forum selection clause reasonable under the facts of this case. Michigan is Furda's domicile, and the contract was negotiated and consummated there. Many aspects of the contract were performed in the Michigan laboratory, including the allegedly false testing on both Michigan and California patients, the training of SBL's employees and the allegedly false studies giving rise to the Furda process. Real parties allege that, contrary to Furda's representations to them, he is not a doctor and is being investigated by various Michigan governmental authorities. In short, all the material misrepresentations alleged to have induced real parties to enter into the agreement took place in Michigan and can best be proved there.

Real parties urge consideration of their inconvenience and financial burden compels a California forum. However, these considerations were known to real parties when they entered into the contract. ██ " 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration

for these things.' [Citation.]" (*Smith, Valentino & Smith, Inc.* v. *Superior Court, supra,* 17 Cal.3d at p. 496.)

Real parties contend *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757], supports their position that the forum selection clause should not be enforced.[4] In *Hall* a contract for the sale of securities contained a forum selection and choice of law clause in favor of Nevada. All the plaintiffs and the individual defendants were California residents, and the corporate defendant had its principal place of business in California. The transaction took place in California, with the exception of formal execution of the contract at the Las Vegas airport.

The court found there was an offer to sell or buy securities in California, thus subjecting the transaction to California's securities law, and held "the right of a buyer of securities in California to have California law and its concomitant nuances apply to any future dispute arising out of the transaction is a 'provision' within the meaning of [California Corporations Code] section 25701 which cannot be waived or evaded by stipulation of the parties to a securities transaction. Consequently, we hold the choice of Nevada law provision in this agreement violates section 25701 and the public policy of this state [citation] and for that reason deny enforcement of the forum selection clause as unreasonable." (*Id.,* at p. 418.)

 Here, there is no applicable statutory scheme prohibiting the parties from waiving California law. Thus no compelling policy reasons for denying enforcement of the forum selection clause exist.[5] Furthermore, the choice of law clause is not in issue, having been neither discussed below nor briefed on appeal. Accordingly, we hold enforcement of the contractual forum selection clause is not unreasonable under the facts of this case, and the lower court abused its discretion in denying Furda's motion to stay the California proceedings.

Let a peremptory writ of mandate issue directing the superior court to stay the California action pending institution and final determination of an action against Furda in Michigan.

---

[4]The trial court found *Hall* persuasive and cited it in support of the finding of adhesion.

[5]This is not to suggest that California has no public policy against health care fraud. Real parties cite sections of the Business and Professions Code to illustrate California's interest in licensing medical laboratories and protecting its citizens from unfair business practices. (Bus. & Prof. Code, §§ 1220, 1222, 1260-1262, 17200 et seq., 17500 et seq.) However, California law does not prohibit medical laboratories from agreeing to another forum. Given the availability of an alternate forum with a strong interest in this transaction, and the substantial number of contacts these parties had with that forum, California's public policy is not violated by enforcing the forum selection clause in this case.

The alternative writ is discharged.

Sonenshine, J., concurred.

**CROSBY, J.**—I concur. California's public policy against health care fraud is only peripherally involved, if at all, in this lawsuit. Plaintiffs do not seek to vindicate the rights of swindled patients, but only to recover money damages for themselves based on ordinary fraud and breach of contract theories. Common law fraud can certainly be described as a violation of California public policy: Redress for that tort, along with punitive damages in appropriate cases, *is* readily available in our courts. But if garden variety fraud were sufficient of itself to defeat a forum selection clause, the rule of *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206] would be quickly swallowed by that exception. No suit on a contract today appears complete without its *de rigueur* fraud count.

The situation was significantly different in *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411 [197 Cal.Rptr. 757], where California's interest was exemplified by an *amicus* brief filed by the Commissioner of Corporations in this court. There also, in addition to fraud and breach of contract, plaintiffs alleged specific statutory violations of the California Corporate Securities Act of which *they* were direct victims.

Moreover, in *Hall,* California had a far greater interest in the outcome than Nevada, whose only contact with the transaction was the execution of an agreement in the Las Vegas airport. The relative interests of California and Michigan are not similarly skewed here, however, at least in this lawsuit, which I again emphasize does not involve defrauded California consumers of laboratory services. Furda's activities, assuming the allegations of the complaint are true, should be curtailed; but they are occurring, in the main, beyond this state's legal ability to interfere. Here, enforcement of the forum selection clause is legally appropriate—and also better policy.