FILED
United States Court of Appeals
Tenth Circuit

November 2, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EMMANUEL D. KEPAS,

     Plaintiff-Appellant,

v.

eBAY, a Delaware corporation,

     Defendant-Appellee.

No. 09-4200

(D.C. No. 2:06-CV-00612-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **LUCERO,** and **HOLMES**, Circuit Judges.

This case involves a challenge by Emmanuel D. Kepas ("Kepas") to the

enforceability of the arbitration agreement ("Arbitration Agreement") existing

between Kepas and his former employer, eBay ("eBay"). Kepas appeals the

district court's order enforcing the Arbitration Agreement, compelling the

arbitration of his claims, and staying Kepas's action against eBay. As Kepas

pursued this appeal after the district court confirmed the arbitration award and

dismissed his action against eBay, we exercise jurisdiction under 28 U.S.C. §

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

1291. We affirm the district court's decision to compel arbitration.

# I

Kepas filed this action against eBay in the United States District Court for the District of Utah alleging claims under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, as well as common law breach of contract and breach of the covenant of good faith and fair dealing claims. App. at 4 (Compl. at 1). In response, eBay filed a motion to compel arbitration and dismiss or stay proceedings, arguing that the Arbitration Agreement covered Kepas's claims. Id. at 25.

In his Complaint, Kepas alleges that eBay, a Delaware corporation with its principal place of business in San Jose, California, operates a facility in Draper, Utah. Id. at 5 (Compl. at 2). Kepas further alleges that, subject to a probationary period, eBay hired Kepas to manage its Draper facility in July of 2003. Id. at 6-7 (Compl. at 3-4), 42. Kepas asserts that, upon the successful completion of his probationary period, eBay provided him with the Arbitration Agreement and conditioned his continued employment on his agreeing to the terms contained therein. Id. at 43. Kepas signed the Arbitration Agreement on November 7, 2003. See id.

The Arbitration Agreement, which appears on eBay letterhead and is typewritten on two pages, specifies the following details concerning its scope:

The parties to this Agreement agree to arbitrate any dispute, demand, claim, or controversy ("claim") they may have against each other . . . which arises from the employment relationship between Employee and Employer or the termination thereof. Claims covered by this Agreement include, but are not limited to, claims of employment discrimination and harassment under Title VII of the Civil Rights Act, as amended, . . . the Age Discrimination in Employment Act, as amended, . . . breach of employment contract or the implied covenant of good faith and fair dealing, express or implied; wrongful termination in violation of public policy . . . .

The parties agree that any claims that either party has that arise out of the Employee Proprietary Information and Inventions Agreement are specifically excluded from this Agreement. This includes, for example and without limiting the generality of the foregoing exclusion, claims by the Company that you have disclosed or misappropriated the Company's trade secrets and/or claims by you that you are the rightful owner of an invention.

Id. at 59-60.

Further, the Arbitration Agreement includes the following forum selection clause and choice-of-law provision:

The arbitration shall be conducted in Santa Clara County . . . in accordance with the rules issued by the American Arbitration Association ("AAA") for resolution of employment disputes, wherever this Agreement is silent on the arbitration procedure. . . .

. . . .

This Agreement shall be governed by and shall be interpreted in accordance with the laws of the State of California. . . .

Id.

The Arbitration Agreement includes the following provisions concerning the arbitration expenses and the types of awards that could be granted in arbitration:

3

The Employer will pay the arbitrator's fee for the proceeding, as well as any room or other charges by AAA. . . .

. . . .

The arbitrator shall have the power to award any type of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of arbitration, attorneys' fees and punitive damages when such damages and fees are available under the applicable statute and/or judicial authority. . . .

Id. (emphasis added). "Costs of arbitration" is then defined in the AAA Rules and Mediation Procedures as: "[a]ll expenses of the arbitrator . . . and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator." Id. at 62-63.

Finally, the Arbitration Agreement requires the following attestations by the employee: "I understand that I would not be hired by the Employer if I did not sign this Agreement. . . . I have been advised of my right to consult with counsel regarding this Agreement." Id.

When Kepas filed the present action, eBay responded with a motion to compel arbitration and stay or dismiss proceedings. Kepas opposed eBay's motion, asserting that the Arbitration Agreement was unenforceable. Id. at 41-42. After conducting a hearing, the district court compelled the arbitration of Kepas's claims and stayed the proceedings against eBay, provided that certain conditions were satisfied. Id. at 81-82. Specifically, the district court required that "eBay agree[] that the arbitrator(s) selected in this case shall have no authority to award

4

eBay arbitrator fees or the costs associated with room or other facility rental for the arbitration hearing" and explained that "[t]he arbitrator(s) may award to eBay only those costs that could be awarded in a proceeding under the Federal Rules of Civil Procedure or the Local Rules of the Utah Federal District Court." Id. Further, the district court modified the Arbitration Agreement to permit "the arbitration hearing to occur in Santa Clara County, California or in Salt Lake County, Utah, at the Plaintiff's election." Id. at 82.

After the court compelled arbitration, Kepas chose to pursue his claims in arbitration in Utah. See id. at 120. The arbitrator ultimately entered an Order on Summary Judgment dismissing each of Kepas's claims with prejudice. Id. at 93-108. The district court then confirmed the arbitrator's decision and dismissed Kepas's action against eBay. Id. at 153-54. Kepas now appeals the district court's decision to compel arbitration, arguing that the Arbitration Agreement, as written, is unenforceable.

## II

"We review a district court's grant or denial of a motion to compel arbitration de novo, applying the same legal standard employed by the district court." Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 796 (10th Cir. 1995). The parties agree that California law applies to this dispute. See also Engalla v. Permanente Med. Group, Inc., 938 P.2d 903, 915 (Cal. 1997) (reasoning that, as the arbitration agreement had an express choice-of-law provision, California law

5

governed a dispute regarding the agreement's enforceability).

"California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act [("FAA")], including a presumption in favor of arbitrability." Id. Similar to the FAA, the California Arbitration Act ("CAA") holds arbitration agreements "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code § 1281. Thus, enforceability of an arbitration agreement is assessed using the same "state law standards that apply to contracts in general." Engalla, 938 P.2d at 915.

On appeal, Kepas identifies the following deficiencies in the Arbitration Agreement: (1) the Arbitration Agreement fails to satisfy the minimum requirements established in Armendariz v. Foundation Health Psychare Svcs., Inc., 6 P.3d 669 (Cal. 2000); and (2) the Arbitration Agreement is unconscionable. Further, he contends that these defects render the agreement unenforceable in its entirety. Thus, Kepas argues that the district court erred in enforcing the Arbitration Agreement. We will examine each alleged defect separately and then determine whether the agreement is enforceable.

### A. **Armendariz Minimum Requirements**

In Armendariz, the California Supreme Court established minimum standards for employer-mandated arbitration agreements that require employees to waive their statutory rights. 6 P.3d at 682. Specifically, such arbitration agreements must:

6

(1) [P]rovide[] for neutral arbitrators, (2) provide[] for more than minimal discovery; (3) require[] a written award, (4) provide[] for all of the types of relief that would otherwise be available in court, and (5) . . . not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.

Id. at 682 & n.8 (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1482 (D.C. Cir. 1997)). An arbitration agreement that fails to satisfy these minimum requirements contravenes public policy. See Armendariz, 6 P.3d at 674. As eBay required that Kepas execute an arbitration agreement that waived his statutory rights pursuant to Title VII and the Age Discrimination in Employment Act, the parties agree that the minimum requirements of Armendariz apply to the Arbitration Agreement. See id. at 680-81 (concluding that the minimum requirements of Cole extend beyond the context of Title VII).

Pursuant to the requirement that employees not bear unreasonable costs or arbitrator fees, Armendariz explains that "the employee [cannot be required] to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." Id. at 687 (emphasis in original). Rather, "the employer [must] pay all types of costs that are unique to arbitration." Id. at 689. Kepas alleges that the Arbitration Agreement impermissibly exposes him to arbitration expenses and to unreasonable witness travel costs.

### 1. Arbitration Costs

Kepas asserts that the Arbitration Agreement violates Armendariz because arbitrator fees and American Arbitration Association ("AAA") costs could be

7

imposed on employees pursuant to the arbitrator's award. We agree.

The Arbitration Agreement expressly allows an arbitrator to award "any type of legal or equitable relief that would be available in a court of competent jurisdiction, including but not limited to, the costs of arbitration." App. at 59-60 (emphasis added). As the term "costs of arbitration" is undefined in the Arbitration Agreement, we look to the AAA Rules and Procedures for its meaning. See id. at 59 (requiring that, "wherever this Agreement is silent on the arbitration procedure," the rules issued by the AAA control). The AAA Rules and Procedures define the term "costs of arbitration" as "[a]ll expenses of the arbitrator . . . and any AAA expenses." Id. at 63. Thus, we conclude that the Arbitration Agreement impermissibly imposes a significant risk of these costs on employees.

eBay's arguments to the contrary are unavailing. First, eBay points to a provision in the Arbitration Agreement specifying that "the Employer will pay the arbitrator's fee for the proceeding, as well as any room or other charges by AAA." Id. at 59. However, this provision merely suggests that eBay will cover these costs initially. The employee nonetheless faces the risk that the arbitrator could shift the costs to him or her in the arbitration award. As a cost-shifting "system . . . poses a significant risk that employees will have to bear large costs to vindicate their statutory right against workplace discrimination," this provision contravenes public policy pursuant to Armendariz. Mercuro v. Superior Court,

8

116 Cal. Rptr. 2d 671, 681-82 (Cal. Ct. App. 2002) (internal quotation marks omitted).

Second, eBay asserts that the arbitrator has no ability to require the employee to pay arbitrator fees and other AAA expenses, as such relief would be unavailable "in a court of competent jurisdiction." App. at 59-60. This argument ignores the language set forth in the Arbitration Agreement. The arbitrator is explicitly authorized by the Arbitration Agreement to impose the "costs of arbitration" on an employee. Id. at 60. Further, adopting eBay's explanation would render the term "costs of arbitration" in the award provision inoperative and, pursuant to the California rules of contract interpretation, such result should be avoided. See Cal. Civ. Code § 1641 (specifying that, when interpreting the language of a contract, the court should give effect to every provision).

As we have concluded that the award provision contravenes public policy, we must also evaluate whether the defect renders the Arbitration Agreement unenforceable in its entirety or whether this provision is severable. After addressing other alleged defects in the Arbitration Agreement, we will turn to the issue of severability.

### 2. Witness Expenses

Kepas argues that the requirements set forth in Armendariz are also violated by the forum selection clause's effect on witness travel expenses. He asserts that the forum selection clause in the Arbitration Agreement could require

9

employees to incur unreasonable witness travel expenses in order for their witnesses to travel to distant arbitration proceedings. Specifically, he argues that the forum selection clause mandates that the arbitration proceedings for covered claims occur in Santa Clara County, California, while his relevant witnesses are located in Utah.

As witness travel costs are not unique to arbitration, Kepas's challenge to the forum selection clause and its related effect on witness travel expenses is not compelling. In fact, courts consider these costs when evaluating the reasonableness of forum selection clauses in conjunction with litigation in general. See Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d 1206, 1209 (Cal. 1976). Thus, an employee's potential to incur witness travel costs does not violate the Armendariz minimum requirements. Rather, Kepas's argument implicates the reasonableness of the forum selection clause itself, which we will also address.

### B. Unconscionability

Pursuant to California law, courts may refuse to enforce unconscionable contracts. Cal. Civ. Code § 1670.5. Thus, arbitration agreements can be challenged based on unconscionability. See Cal. Civ. Proc. Code § 1281. In California, unconscionability requires evidence of both procedural and substantive elements. Armendariz, 6 P.3d at 690. However, these components "need not be present in the same degree." Id. Rather, "the more substantively

10

oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

Kepas contends that the clauses delineating the scope of the Arbitration Agreement, as well as the forum selection clause, are unconscionable.

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." Parada v. Superior Court, 98 Cal. Rptr. 3d 743, 756 (Cal. Ct. App. 2009) (internal quotation marks omitted). When evaluating contracts for procedural unconscionability, California courts consider: (1) whether the agreement is an adhesion contract; (2) whether oppression played a role in execution of the agreement; and (3) whether a party was surprised by the agreement's hidden terms. See id. at 756-57. Courts then balance the presence or absence of each factor. See id. at 758.

An adhesion contract is defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 6 P.3d at 689 (internal quotation marks omitted). The Arbitration Agreement is clearly an adhesion contract. It is a standardized agreement that eBay, the party with superior bargaining power, drafted and provided to Kepas. Further, eBay required that Kepas complete the agreement at the end of his

11

probationary period, and the express language of the agreement conditions Kepas's continued employment on his acceptance of its terms.

Nonetheless, our concluding that the Arbitration Agreement is an adhesion contract does not end the procedural unconscionability analysis. Parada, 98 Cal. Rptr. 3d at 757. We must proceed to the remaining factors. Id. "Oppression" refers to the "absence of power to negotiate the terms of the contract" as well as the "absence of reasonable market alternatives." Id. at 758 (internal quotation marks omitted). Despite the fact that the Arbitration Agreement permitted Kepas to consult with an attorney regarding its terms, most employees are not "in a position to refuse a job because of an arbitration requirement," Armendariz, 6 P.3d at 690, even under the advice of counsel. eBay contends that Kepas was already an employee at the time he entered the Arbitration Agreement, and thus, he was in a position to negotiate the terms of the Arbitration Agreement. However, this argument is unpersuasive as eBay required Kepas to enter the agreement when he completed his probationary employment period. As a result, Kepas could reasonably have concluded that he had to execute the Arbitration Agreement in order to continue his employment with eBay by becoming a permanent eBay employee.

"Surprise" addresses "whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party." Parada, 98 Cal. Rptr. 3d at 757 (internal quotation marks omitted). The

12

Arbitration Agreement lacks the element of surprise.  Specifically, the Arbitration Agreement was typewritten on two pages.  Further, the challenged terms were not beyond Kepas's reasonable expectations.  As eBay is headquartered in California, a forum selection clause selecting California as the arbitration forum could reasonably be expected.  Additionally, the claims governed by the Arbitration Agreement, as well as those claims excluded from arbitration, were clearly identified.

Thus, we conclude that procedural unconscionability is present.  However, the degree of procedural unconscionability is reduced due to the lack of surprise.

### 2.  Substantive Unconscionability

"A provision is substantively unconscionable if it involves contract terms that are so one-sided as to shock the conscience, or that [are] . . . harsh or oppressive . . . ."  Id. at 759 (internal quotation marks omitted).  Kepas asserts two arguments for substantive unconscionability.  First, he argues that the Arbitration Agreement lacks mutuality.  Second, he argues that the forum selection clause is unreasonably oppressive to employees.

### a. Mutuality

Pursuant to California law, arbitration agreements are substantively unconscionable when they lack a "modicum of bilaterality."  Armendariz, 6 P.3d at 692 (internal quotation marks omitted).  Such one-sidedness exists when arbitration agreements "compel[] arbitration of the claims more likely to be

13

brought by the weaker party, but exempt[] from arbitration the types of claims that are more likely to be brought by the stronger party." Fitz v. NCR Corp., 13 Cal. Rptr. 3d 88, 104 (Cal. Ct. App. 2004) (citing Armendariz, 6 P.3d at 692). Further, lack of mutuality exists when employees are required to pursue arbitration for claims arising out of the same transaction or occurrence that the employer can litigate. See Fitz, 13 Cal. Rptr. 3d at 105. Nevertheless, courts uphold arbitration agreements lacking mutuality if the employer can present a reasonable business justification for the one-sidedness of the agreement. See Armendariz, 6 P.3d at 692.

We conclude the Arbitration Agreement is sufficiently bilateral based on its plain language. Specifically, the Arbitration Agreement broadly applies to all claims the parties have against one another arising from the employment relationship. See App. at 59. The Arbitration Agreement then expressly excludes from arbitration the claims "that either party has that arise out of the Employee Proprietary Information and Inventions Agreement." Id. As the exclusion from arbitration applies to all claims "arising out of" the Employee Proprietary Information and Inventions Agreement, the employee would be able to pursue litigation for all conduct arising from the same transaction or occurrence that the employer can litigate. For example, per the Arbitration Agreement, an employee terminated for stealing trade secrets could litigate an accompanying wrongful termination claim, as this claim would arise out of the Employee Proprietary

14

Information and Inventions Agreement.  Cf. Armendariz, 6 P.3d at 694

(concluding that the agreement lacked mutuality on this basis).

Kepas contends that the Arbitration Agreement lacks mutuality by requiring

employees to arbitrate the claims that they are likely to pursue, while eBay can

litigate its likely claims.  As the party challenging the agreement, Kepas has the

burden to adequately support this contention.  See Arguelles-Romero v. Superior

Court, 109 Cal. Rptr. 3d 289, 305 (Cal. Ct. App. 2010) (specifying that "[i]t is the

plaintiff's burden to introduce sufficient evidence to establish

unconscionability.").  However, Kepas fails to identify the types of claims

excluded from arbitration pursuant to the Employee Proprietary Information and

Inventions Agreement.  Instead, Kepas merely asserts that these claims are more

likely to be brought by the employer.

Further, the cases that Kepas cites to support the contention that the

Arbitration Agreement lacks mutuality are distinguishable.  Specifically, in

Mercuro, the court concluded that an arbitration agreement was substantively

unconscionable because it specifically covered claims "for breach of express or

implied contracts or covenants, tort claims, claims of discrimination . . . and

claims for violation" of any law, while it excluded from arbitration "claims for

injunctive and/or equitable relief" for any intellectual property violations.  116

Cal. Rptr. 2d at 677 (internal quotation marks omitted).  The court concluded that

the "agreement compel[led] arbitration of the claims employees are most likely to

bring against" the employer, and exempted from arbitration the claims the employer "is most likely to bring against its employees." Id. While the plain language of the agreement excluded from arbitration both employee and employer intellectual property claims, it effectively only allowed litigation of the employer's claims as employees would generally not seek injunctive or equitable relief. See id. In contrast, the arbitration agreement at issue applies to all employment-related claims and excludes from arbitration both employer and employee claims regardless of the relief sought.

Nonetheless, in Fitz, the court concluded that an agreement covering "most workplace concerns," while excluding from arbitration "disputes over confidentiality / non-compete agreements or intellectual property rights" lacked mutuality. 13 Cal. Rptr. 3d at 92, 104-05 & n.6 (internal quotation marks omitted). The court determined that this agreement included the claims that employees would most likely pursue against the employer, and excluded from arbitration the claims the employer would most likely bring against the employee. Id. at 104-05. While the agreement in Fitz is more analogous to the arbitration agreement at issue, a key distinction is present in this case because of the unique industry in which eBay operates. As a technology company, eBay employs many individuals that develop their own inventions. Thus, the provision excluding from arbitration the claims "that either party has that arise out of the Employee Proprietary Information and Inventions Agreement" is likely to be used by

16

employees as well as eBay.[1]  App. at 59.  While Kepas correctly argues that employers have the burden to establish their asserted business justifications for one-sided arbitration agreements, see Mercuro, 116 Cal. Rptr. 2d at 678 (citing Armendariz, 6 P.3d at 692), the argument in this context is misplaced.  eBay's industry is not used here to justify a one-sided arbitration agreement, but rather to determine whether its employees are more likely to also pursue the claims excluded from arbitration.  Thus, we conclude that the claims excluded from arbitration are likely to be pursued by both parties, rendering the Arbitration Agreement sufficiently bilateral.

## b.  Forum Selection Clause

"[F]orum selection clauses are given effect . . . absent a showing that enforcement would be unfair or unreasonable."  Furda v. Superior Court, 207 Cal. Rptr. 646, 650 (Cal. Ct. App. 1984).  Courts "place a heavy burden on the plaintiff who seeks to prove that a forum selection clause is unreasonable, particularly where the alleged unreasonableness is based on additional expense

---

[1]The dissent concludes that Fitz controls the outcome of this case as the employer in Fitz was also a "technology company."  (Dissent at 1).  However, in Fitz, rather than arguing that employees were more likely to bring intellectual property claims based on its industry, the employer merely "cite[d] cases where employees ha[d] filed actions against employers over noncompete agreements and intellectual property claims" to support the conclusion that the agreement at issue was sufficiently bilateral.  Fitz, 13 Cal. Rptr. 3d at 104.  In contrast, eBay contends that employees are likely to pursue the claims excluded from the Arbitration Agreement based on the industry in which it operates.  Thus, we conclude that the distinction based on eBay's industry is not precluded by Fitz.

17

and inconvenience of litigating far from home." Aral v. Earthlink, Inc., 36 Cal. Rptr. 3d 229, 241 (Cal. Ct. App. 2005). Nevertheless, this burden is not insurmountable. Id. The party challenging the forum selection clause must show that requiring proceedings in the "'contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" Id. at 241-42 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)). Alternatively, the challenging party must show that there is "no rational basis . . . for the choice of forum." Intershop Commc'ns v. Superior Court, 127 Cal. Rptr. 2d 847, 853 (Cal. Ct. App. 2002).

Kepas fails to satisfy this heavy burden. While he argues that the forum selection clause imposes additional expenses and potentially impairs his ability to secure the presence of witnesses, Kepas does not show that these issues would effectively preclude him from asserting his claims. Thus, this case is distinguishable from Bolter v. Superior Court, 104 Cal. Rptr. 2d 888 (Cal. Ct. App. 2001). In Bolter, the court concluded that requiring the plaintiffs to pursue their claims in a distant forum essentially deprived them of their day in court based on the circumstances. See id. at 895. Specifically, the court noted that the plaintiffs were "Mom-and-Pop franchisees" operating one-person stores and they would have to "close down their shops, pay for airfare and accommodations . . . and absorb the increased costs associated in having counsel familiar with Utah law" to pursue their claims. Id. at 894. Further, the plaintiffs declared that "they

18

are all suffering from severe financial hardships and could not afford to maintain their claims if forced to litigate the matter out of state." Id. at 895. The arbitration agreement also deprived the plaintiffs of the ability to consolidate their claims to spread these increased costs. Id. at 894. Kepas's assertions regarding additional expenses do not rise to the level of hardships faced by the plaintiffs in Bolter.

Additionally, some of the hardships which allegedly arise from the forum selection clause are illusory. Specifically, he suggests that he would be unable to secure the presence of his Utah witnesses in California. While the California subpoena power is limited to residents of California, see Cal. Civ. Proc. Code § 1989, Kepas could nevertheless obtain the testimony of his Utah witnesses by deposing them in Utah. Further, Kepas cites witness travel costs as a hardship. However, rather than incur travel costs for his witnesses, Kepas could use their deposition testimony. See Smith, 551 P.2d at 1209.

Finally, there is a reasonable connection between the cause of action and the forum selected. Specifically, eBay's principal place of business is California. See Lu v. Dryclean-U.S.A. of Cal., Inc., 14 Cal. Rptr. 2d 906, 908 n.2 (Cal. Ct. App. 1992) (noting that a party's principal place of business evidences a relationship to the forum). Thus, as the forum selected does not preclude Kepas from asserting his claims and is rationally related to the cause of action, the

19

forum selection provision is not substantively unconscionable.[2]

## C. Severability

Based on the foregoing analysis, the sole defect in the Arbitration Agreement is the potential for the arbitrator to impose the "costs of arbitration" on the employee. Thus, we must consider whether the objectionable term is severable, or whether it renders the entire Arbitration Agreement unenforceable. We conclude that this provision is severable.

"Arbitration agreements that fail to meet conscionability standards, or those that violate public policy, nevertheless may be enforced if the objectionable terms can be severed." Abramson v. Juniper Networks, Inc., 9 Cal. Rptr. 3d 422, 437 (Cal. Ct. App. 2004). To evaluate the severability of an unlawful provision, the "overarching inquiry" is whether severance would further "the interests of justice." Armendariz, 6 P.3d at 696 (internal quotation marks omitted). To that end, California courts weigh several factors. Abramson, 9 Cal. Rptr. 3d at 438-39. First, courts consider the essential object of the agreement to determine whether the illegality is collateral to the main purpose. Id. at 438 (citing Armendariz, 6 P.3d at 696). Second, courts consider whether the agreement contains more than one objectionable term to assess the pervasiveness of the illegality. Abramson, 9 Cal. Rptr. 3d at 438-39 (citing Armendariz, 6 P.3d at

---

[2] The district court ultimately modified this provision and the arbitration proceedings were conducted in Utah. App. at 81-82, 93.

697).  Finally, courts evaluate whether there is a single provision that a court can strike or otherwise restrict to remove the illegality from the agreement. Abramson, 9 Cal. Rptr. 3d at 438-39 (citing Armendariz, 6 P.3d at 696-97).

While not explicitly stated in the agreement, we conclude that the Arbitration Agreement's primary purpose is "to provide a mechanism to resolve disputes."  Gutierrez v. Autowest, Inc., 7 Cal. Rptr. 3d 267, 280 (Cal. Ct. App. 2003) (finding the imposition of substantial arbitration costs as collateral to the main purpose of the arbitration agreement at issue).  Thus, the provision allowing the arbitrator to impose the "costs of arbitration" on the employee is collateral to this central purpose.  Further, the only objectionable provision in the Arbitration Agreement is this award provision.  Thus, the illegality is not pervasive and the Arbitration Agreement does not represent a systematic effort to deprive employees of their rights.  Finally, by excising the "costs of arbitration" term from the award provision, the deficiency in the Arbitration Agreement can be easily rectified.  Thus, this objectionable term is severable and the remainder of the Arbitration Agreement is enforceable.

The district court properly restricted the meaning of the award provision and compelled arbitration. We therefore affirm the district court's decision.

Entered for the Court


Mary Beck Briscoe
Chief Judge

**LUCERO**, J., dissenting.

I respectfully dissent. Contrary to the majority's holding, the Arbitration Agreement lacks mutuality, and is therefore substantively unconscionable. See Fitz v. NCR Corp., 13 Cal. Rptr. 3d 88, 103 (Ct. App. 2004) ("In assessing substantive unconscionability, the paramount consideration is mutuality."). As with the unconscionable agreement in Fitz, the Arbitration Agreement exempts claims related to intellectual property—those claims recognized by Fitz as more likely to be brought by the employer, rather than employees. However, the majority holds that this carve-out is not unilateral and distinguishes the instant case from Fitz on the grounds that eBay, unlike NCR, is a "technology company" which "employs many individuals that develop their own inventions." (Majority Op. 16.)

What the majority fails to recognize is that the employer in Fitz, NCR or National Cash Register Corporation, is also a "technology company" and this fact was before the Fitz court.[1] Moreover, the California Court of Appeal in Fitz,

---

[1] Brief of Defendant-Appellant at 26, Fitz v. NCR Corp., No. D041738 (Cal. Ct. App., July 1, 2003) ("NCR, formerly known as National Cash Register Company, is a technology company."). See also, NCR, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, http://www.sec.gov/Archives/edgar/data/70866/00011931251 0041121/d10k.htm (last visited Oct. 22, 2010) ("NCR Corporation and its subsidiaries . . . provide technology and services . . ."). NCR developed the first electric cash register, one of the first ATMs, early computers, invented the liquid crystal display and commercialized the bar code scanner. NCR History, NCR, http://www.ncr.com/ about_ncr/company_overview/history.jsp (last visited Oct.

(continued...)

rejected an almost identical argument from NCR.  The company cited cases in which employees brought suit over intellectual property claims.  Nonetheless, the court held that the exemption for intellectual property claims lacked mutuality because "it is far more often the case that employers, not employees, will file such claims."  Fitz, 13 Cal. Rptr. 3d at 104.  Fitz is clear:  The fact that an employer is a technology company and that some employees might advance intellectual property claims does not render an intellectual property carve-out mutual.  Fitz governs this case, and the exemption is therefore unconscionable.

I also disagree with the majority on the issue of remedy for the defective provisions of the Arbitration Agreement.  Because I would hold the intellectual property exemption unconscionable, the district court's failure to strike this provision renders its severance remedy inadequate.  Invalidation of the Arbitration Agreement in its entirety vindicates California's policy objective of deterring employers from "routinely inserting such a deliberately illegal clause into the arbitration agreement it mandates for its employees."  Armendariz v. Found. Health Psychcare Serv., Inc., 6 P.3d 669, 697 n.13 (Cal. 2000).

---

(...continued)
22, 2010).  NCR is not alone in its contention that it is, in fact, a technology company.  The Atlanta Journal-Constitution described the company as a "[t]echnology giant."  J. Scott Trubey, NCR Profit Soars in the Third Quarter, Atlanta J.-Const., Oct. 21, 2010, available at http://www.ajc.com/business/ncr-profit-soars-in-687569.html.

2

Otherwise—as in this case—"employers are encouraged to overreach; if the covenant they draft is overbroad then the court will redraft it for them."  Id.

For the foregoing reasons, I respectfully **DISSENT**.