[Civ. No. 57273. Second Dist., Div. Two. July 15, 1980.]

E.I.C., INC., Cross-complainant and Appellant, v.
BANK OF VIRGINIA et al., Cross-defendants and Respondents.

COUNSEL

Joseph W. Fairfield for Cross-complainant and Appellant.

O'Melveny & Myers, James W. Colbert III, Joseph L. Golden and Lewis B. Kean for Cross-defendants and Respondents

OPINION

**FLEMING, J.**—Cross-complainant E.I.C., Inc. appeals two superior court orders quashing service of process upon cross-defendants Bank of Virginia, a Virginia corporation, and J. Robert Carlton, a Virginia resident. The underlying action was brought by Lincoln Savings Bank, a

New York corporation, to enforce a deficiency judgment obtained in Kentucky against E.I.C., a California corporation, and against PN Corporation, a Virginia corporation. E.I.C.'s cross-complaint alleged a conspiracy by Bank of Virginia, J. Robert Carlton, and others to defraud E.I.C.

In accordance with the usual rule of appellate review, we state the facts most favorably to the prevailing parties below.

In December 1972 E.I.C. purchased Kentucky property from PN Corporation, a Virginia corporation wholly owned by Carlton Industries, Inc., of which J. Robert Carlton was an officer and sole shareholder. Under the purchase contract E.I.C. agreed (1) to assume a preexisting construction loan, (2) to execute a note payable to PN and secured by the Kentucky property (the PN mortgage), and (3) to pay PN $250,000. In the event PN failed to fulfill certain terms and conditions of the contract, it would repay the $250,000 to E.I.C. Repayment would be guaranteed by a letter of credit for $250,000 to be given to E.I.C. In January 1973, at Carlton Industries' request and expense, Bank of Virginia, in Richmond, Virginia, issued an irrevocable letter of credit for $250,000 in favor of E.I.C. to secure full performance by PN of the terms and conditions of the purchase contract. The letter of credit, payable in Virginia, was mailed to E.I.C.'s office in Beverly Hills, California. The underlying funds, however, were never drawn upon, and in August 1974 the letter of credit was cancelled with E.I.C.'s consent.

The PN note and mortgage executed by E.I.C. as part of the purchase agreement were assigned by PN to Bank of Virginia as security for obligations which Carlton Industries owed the bank, including that for the letter of credit issued to E.I.C. Negotiations for assignment of the note and mortgage were conducted between the bank and Carlton Industries in Virginia, and the transaction was consummated by PN's delivery of the instrument of assignment to the bank at Richmond, Virginia.

In May 1976, Bank of Virginia began an action in Kentucky to foreclose the PN mortgage. A defendant in that action, Lincoln Savings Bank (Lincoln), cross-complained to foreclose its own mortgage on the same property held as security for a promissory note given to it by PN, which note had been personally guaranteed by J. Robert Carlton. The Kentucky court found Lincoln's mortgage superior to the PN mortgage

held by Bank of Virginia, and in April 1978 it entered judgment in favor of Lincoln against PN and E.I.C. The proceeds from the subsequent sale of the property were less than the indebtedness owed to Lincoln on the note, and in June 1978 Lincoln obtained a deficiency judgment against PN and E.I.C. for the unpaid amount of the note.

In September 1978 Lincoln filed an action in the Superior Court in Los Angeles against E.I.C. and PN on the Kentucky deficiency judgment. E.I.C. cross-complained against Lincoln, PN, Bank of Virginia, J. Robert Carlton, and others, alleging that the cross-defendants conspired in 1972 to defraud and cheat E.I.C. by overstating the value of the Kentucky property, by concealing PN's assignment of its mortgage to Bank of Virginia, and by including terms not agreed to by E.I.C. in the deed conveying the Kentucky property to E.I.C. (All these alleged conspiratorial acts occurred outside California.) E.I.C. further alleged that Lincoln's deficiency judgment had been procured through extrinsic fraud and without due process of law and was void. Both Bank of Virginia and Carlton moved to quash service of process on the ground the California courts lacked personal jurisdiction over them. The trial court granted the motions to quash, and E.I.C. appealed.

Code of Civil Procedure section 410.10 provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." ■ The due process clause, which protects a nonresident against inconvenient litigation in a distant forum, requires that a nonresident have at least "minimum contacts" with the forum state. (*World-Wide Volkswagen Corp.* v. *Woodson* (1980 444 U.S. 286, 292-293 [62 L.Ed.2d 490, 498 [100 S.Ct. 559].) The United States Supreme Court, although recognizing that the limits imposed by the due process clause on a state's exercise of jurisdiction have been substantially relaxed as a result of the increasing nationalization of commerce, has recently reiterated that "state lines are [not] irrelevant for jurisdictional purposes," and that a state may not "'make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.'" (*World-Wide Volkswagen Corp.* v. *Woodson, supra*, 444 U.S. at p. 294 [62 L.Ed.2d at p. 499]; *Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 92-93, 98 [56 L.Ed.2d 132, 141-142, 145, 98 S.Ct. 1690].) The general rule is that a forum court may not assume personal jurisdiction over a nonresident defendant unless his relationship with the state is such as to make the exercise of jurisdiction reasonable in the

context of our federal system. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264]; *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 320 [90 L.Ed. 95, 104-105, 66 S.Ct. 154, 161 A.L.R. 1057]; *World-Wide Volkswagen Corp.* v. *Woodson, supra*, 444 U.S. at p. 293 [62 L.Ed.2d at p. 499].) ■ When a nonresident's activities in the forum state are substantial, continuous, and systematic, the state may assert general personal jurisdiction over him for all causes of action. In such instances no connection between the pleaded cause of action and his business activities in the state is required. But when the nonresident's activities are not sufficiently pervasive to justify the exercise of general personal jurisdiction over him, jurisdiction depends upon the nature and quality of his activity in the forum in relation to the particular cause of action pleaded. In such instances a court may exercise limited personal jurisdiction over the nonresident if (1) the cause of action arises out of an act done or transaction consummated in the forum, or (2) the defendant has "purposefully availed himself of the privilege of conducting activities in [California], thereby invoking the benefits and protections of its laws." (*Cornelison* v. *Chaney, supra*, pp. 147-148.)

In the light of these general principles, we turn to the orders before us:

■ *Bank of Virginia*. E.I.C. contends the business activities of Bank of Virginia in California furnish an adequate basis for the exercise of general personal jurisdiction over the bank. It is undisputed that Bank of Virginia, a Virginia corporation, did not maintain any offices or own any property in California, did not station any officers or employees in this state, and had not secured authorization to transact business here. But, appellant notes, during the period January 1978 through March 1979 two California customers of Bank of Virginia maintained sizable checking accounts in the bank's White Stone, Virginia, office, and a third secured a $1 million line of credit from the bank's Richmond office. Furthermore, asserts appellant, Bank of Virginia maintained correspondent banking relations with two California banks and kept noninterest-bearing compensating balances of $500,000 on deposit with those California banks. Appellant argues these business activities sufficed to give California general personal jurisdiction over Bank of Virginia.

But in point of fact the activities relating to the bank's three California customers all took place in Virginia, where the checking accounts

and the line of credit were maintained. Undoubtedly a bank the size of Bank of Virginia has depositors who reside throughout the country and overseas, and it would be an absurdity to conclude from this that the bank was doing business in each of the home jurisdictions of its depositors. We find equally slender the assertion of general personal jurisdiction in California over Bank of Virginia based on its correspondent banking relations with two California banks. Again, most banks of any size maintain correspondents in all major regions of the country and in selected areas overseas. It would be a distortion of due process to hold that a state acquires general personal jurisdiction over an out-of-state bank (as opposed to in rem jurisdiction) merely because the bank has a correspondent relationship with a bank within the state and a balance on deposit with its correspondent bank. (*Bank of America* v. *Whitney National Bank* (1922) 261 U.S. 171, 173 [67 L.Ed. 594, 43 S.Ct. 311].) Significantly, Bank of Virginia neither maintained an office or a staff in California nor engaged in lending or borrowing money in California. In brief, it conducted no banking business in California, and, under the authorities previously cited, its connections with California were insufficient to subject it to the exercise of general personal jurisdiction by California courts.

Nor do we think the issuance of a letter of credit in favor of E.I.C., a California corporation, and the mailing of the letter to the latter's office in Beverly Hills, provided sufficient contact with California to warrant the exercise by California courts of limited personal jurisdiction over the bank, even if, as E.I.C. contends, the letter had some connection with the sale of the property to E.I.C. To create a basis for jurisdiction over a nonresident, his forum-related contact must have put in motion the events which ultimately gave rise to the cause of action. At bench, the letter of credit was not related to the causes of action pleaded against Bank of Virginia, and in fact it is not even mentioned in the cross-complaint. On the facts pleaded, no connection exists between delivery of the letter of credit in California and E.I.C.'s causes of action, and the substantial nexus required between the act in California and the cause of action sought to be prosecuted in California against a nonresident defendant has not been established. We conclude the letter does not provide a basis for asserting limited personal jurisdiction over Bank of Virginia. (*Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 590 [142 Cal.Rptr. 478]; *Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 447 [128 Cal.Rptr. 34, 546 P.2d 322]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 149 [127 Cal.Rptr. 352, 545 P.2d 264].)

■ *Carlton.* E.I.C. argues the California courts may exercise jurisdiction over J. Robert Carlton (1) because he is the sole shareholder of Carlton Industries, PN's parent corporation, and (2) because he personally guaranteed a promissory note for the debt secured by the Lincoln mortgage. Carlton's uncontroverted declaration establishes that he is a resident of Virginia; his offices are located in Richmond, Virginia; he had never resided or done business in California, either in his own name or in corporate form; he owns no property, real or personal, in California; he has not consented to the jurisdiction of California; and he has never done business as Carlton Industries. Accepting these assertions as true, they rebut any claim of general personal jurisdiction over him in California. The claim of limited personal jurisdiction over Carlton by reason of his personal guarantee of the promissory note given to Lincoln Savings Bank in New York is even more tenuous than the claim of limited personal jurisdiction over Bank of Virginia based on its letter of credit. The guarantee has no relationship to any event taking place in California and has no relevancy to the causes of action pleaded in E.I.C.'s cross-complaint—which does not refer to it. We find the claimed basis for limited personal jurisdiction wholly without substance.

The orders are affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied July 31, 1980, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1980.