[Civ. No. 49621. First Dist., Div. Four. Feb. 7, 1983.]

MICHAEL J. BRESLER et al., Plaintiffs and Appellants, v.
GEORGE STAVROS, Defendant and Respondent.

COUNSEL

Vernon L. Bradley for Plaintiffs and Appellants.

Ralph M. Tener and Long & Levit for Defendant and Respondent.

OPINION

CHRISTIAN, J.—Michael J. Bresler, M.D., and other plaintiffs appeal from an order quashing service of the summons on defendant-respondent George Stavros, M.D., on the ground of lack of personal jurisdiction. We reverse the order.

Appellants alleged in their complaint that appellant physicians and defendant Dr. Congress owned all the stock in the Foster City Emergency Medical Group, Inc., a California professional corporation. In summer of 1978, appellants entered into an agreement with respondent and the other two defendants for the purchase of appellants' interests in the corporation; the defendants executed five documents—a contract of sale, a promissory note, an assignment

of a lease, an indemnification agreement, and the memorial of an oral understanding between Congress and the purchasers—in connection with the contemplated transaction. The complaint alleges the purchasers breached their obligations under these instruments and that defendant Congress conspired with the purchasing defendants to induce appellants to accept a lower purchase price and failed to disclose his understanding with the purchasers that he would continue to retain a one-quarter interest in the clinic.

Respondent submitted a declaration that he was a resident of Arizona and had not lived in California since his military duty in the state from 1963 to1965. In 1963, he obtained a license to practice medicine in California and has "maintained that license ever since." He asserted, however, he had not practiced medicine in California since 1965. He executed the documents for the sale of the corporate stock in Arizona and was not involved in the negotiations leading up to the transaction. He stated he had never had any communications with the appellants; however, he had spoken on the telephone with defendant Congress, "a personal friend." Respondent declared that his "sole purpose in attempting to purchase the stock . . . was investment. I had no intention of entering into the practice of medicine in California or of taking any part in the management of the corporation. I have not worked in the clinic operated by the corporation and taken no part in managing it. I have never received a stock certificate evidencing the shares I attempted to purchase."

Appellants submitted the declarations of the custodian of records for the Foster City Emergency Medical Group. Her records, attached to the affidavit, indicate that respondent visited the clinic for two days in September 1978, less than a week after the execution of the contract of sale; respondent saw twelve patients on these dates.

In a supplemental declaration, respondent's counsel stated that he had telephoned respondent to bring to his attention the evidence of his visit to the clinic. "With his memory thus refreshed, Dr. Stavros recalled that he came to the clinic on one occasion, stayed overnight in California, and returned to Arizona the following day. He told me that this one visit was the only time he has been to the clinic, worked in the clinic, or come to California in connection with the clinic."

■ The party seeking to establish jurisdiction over a nonresident defendant bears the burden of demonstrating by a preponderance of the evidence that the exercise of jurisdiction is appropriate. (See *R. E. Sanders & Co.* v. *Lincoln-Richardson Enterprises, Inc.* (1980) 108 Cal.App.3d 71, 74 [166 Cal.Rptr. 269]; *Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35].) However, defects in that party's showing may be cured by admissions in the opposing party's declarations and

moving papers. (See *Spirits, Inc.* v. *Superior Court* (1980) 104 Cal.App.3d 918, 920 [164 Cal.Rptr. 918].) Where the declarations reveal a conflict in the evidence, an appellate court will not disturb the trial court's determination if it is supported by substantial evidence. Here, respondent admitted that, as indicated in appellants' complaint and declaration, he had executed the various documents for the purchase of shares in the medical corporation and had paid an overnight visit to the clinic where he treated several patients. Thus, there was no genuine conflict in the evidence.

Through Code of Civil Procedure section 410.10, the Legislature has permitted the courts of California to exercise jurisdiction over nonresident defendants to the maximum extent constitutionally permissible. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322], cert. den. *sub nom. Carlsberg Mobile Home Properties, Ltd.-'72* v. *Sibley,* 429 U.S. 826 [50 L.Ed.2d 89, 97 S.Ct. 82]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) Consequently, the question for this court is whether the undisputed facts indicate respondent has sufficient "minimum contacts" with California that subjecting him to jurisdiction in this state "does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101, 66 S.Ct. 154, 161 A.L.R. 1057]; see also *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 100 S.Ct. 559]; *Rush* v. *Savchuk* (1980) 444 U.S. 320 [62 L.Ed.2d 516, 100 S.Ct. 571]; *Shaffer* v. *Heitner* (1977) 433 U.S. 186 [53 L.Ed.2d 683, 97 S.Ct. 2569]; *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)

As respondent's activities in California are clearly not "extensive or wide-ranging" or "substantial . . . continuous and systematic," appellants do not claim he is subject to general jurisdiction here. (See *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 147.) Instead, they maintain his role in the purchase of the medical corporation subjects him to limited jurisdiction with respect to controversies arising out of that transaction. "If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. [Fn. omitted.] The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the

convenience of the parties and the interests of the state in assuming jurisdiction. [Citations.]" (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 147-148.)

■ Several considerations persuade us that by his purchase with two co-investors of the entire stock of a California medical corporation, respondent, a licensed practitioner, purposely availed himself of a state-conferred "privilege" and invoked the "benefits and protections" of California law. A related basis for jurisdiction—an out-of-state party's intentional participation in "an activity that the State treats as exceptional and subjects to special regulation"—is also applicable. (*Hanson* v. *Denckla, supra,* 357 U.S. 235, 252-253 [2 L.Ed.2d 1283, 1297-1298]; see also *McGree* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199].) Respondent characterizes himself as a passive investor, admitting thereby that he intended to derive income from a business physically and legally situated in California. (See *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 901-902 [80 Cal.Rptr. 113, 458 P.2d 57]; *Neadeau* v. *Foster* (1982) 129 Cal.App.3d 234, 239-240 [180 Cal.Rptr. 806].) As a purchaser of California securities, respondent subjected himself to both the protections and the potential liabilities established by the Corporate Securities Law of 1968 which prohibits misrepresentations and insider trading in such transactions. (Corp. Code, §§ 25000, 25400, 25401, 25402, 25500.) Only respondent's state medical certification, which he admits he "maintained" since originally obtaining it in 1963, permitted him to purchase any shares in the medical corporation. (Corp. Code, §§ 13401, subd. (c), 13406, 13407.) Further, detailed administrative regulations govern the formation of and transfer of shares in California medical corporations. (See Cal. Admin. Code, tit. 16, § 1680 et seq.) In short, it is not merely an incidental fact from defendant's perspective that California is the place of incorporation of the business in which he sought to invest. (Compare *Shaffer* v. *Heitner, supra,* 433 U.S. 186.) In effect, respondent entered into a "bargain" with the forum state as well as with the appellant vendors. The state confers upon a licensed medical practitioner admission to a legal monopoly and further permits him the many advantages of conducting business in a corporate form. In turn, a physician (or physician-investor) subjects himself to regulation; in neither the financial nor the purely medical aspects of his profession is he an ordinary businessman or investor.

Exercise of jurisdiction is appropriate even where the nonresident defendant's activities are not so closely connected to state-conferred benefits or facilitation of economic activity. In *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548], a Pennsylvania defendant allegedly fraudulently induced the issuance of shares of stock by a California corporation. He had never resided in, done business in, or received income from California. Nor was the business of the corporation subject to special regulations as is the practice of medicine. In light of the Legislature's regulation of the

fairness of securities transactions through the Corporate Securities Law, *supra,* the defendant was properly subject to California jurisdiction. (*Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 296, 306-309; see also *St. Joe Paper Co.* v. *Superior Court* (1981) 120 Cal.App.3d 991 [175 Cal.Rptr. 94], cert. den. (1982) 455 U.S. 982 [71 L.Ed.2d 691, 102 S.Ct. 1489] [out-of-state defendant's alleged activities constituting violations of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.) subjected him to California jurisdiction].)

Respondent's performance of medical services during his brief visit to the Foster City clinic does not automatically subject him to jurisdiction, but it is a pertinent consideration in determining whether he invoked the "benefits" of forum law. *Lundgren* v. *Superior Court* (1980) 111 Cal.App.3d 477 [168 Cal.Rptr. 717], upheld the exercise of jurisdiction over an accounting firm which had provided its services to one of the parties in the corporate merger out of which the controversy arose. "It is not of great importance at this juncture whether [the accountant] stayed a few days or several weeks. It is undisputed that as an officer of Lundgren P.C., he came to California in the course of his professional duties, there to render an important professional service to his client. In this way Lundgren P.C. 'purposefully [availed itself] of the privilege of conducting activities' in California." (*Lundgren* v. *Superior Court, supra,* 111 Cal.App.3d 477, 484.) Again, the greater degree of regulation to which the state subjects the medical profession makes the instant respondent still more amenable to the jurisdiction of California courts.

Respondent contends that the instant suit involves not securities or the practice of medicine but merely the "execution and nonperformance of contracts, activities which are not subject to special regulation." This characterization is specious—contracts are simply the means by which economic transactions of all sorts are effected. A transfer of securities does not cease to be a securities transaction subject to government regulation because it is consummated through a written contract. *Floyd J. Harkness Co.* v. *Amezcua* (1976) 60 Cal.App.3d 687 [131 Cal.Rptr. 667], and *Floyd J. Harkness Co.* v. *Habermann* (1976) 60 Cal.App.3d 696 [131 Cal.Rptr. 672], cited by respondent, are readily distinguishable. There, plaintiff California corporation contracted with Mexican defendants for the purchase of vegetables and their shipment from Mexico to Arizona; the only connection between the subject matter of the contract and the forum was the provision that certain promissory notes were payable to plaintiff in California. In each case, the court concluded defendants had done nothing to invoke the benefits and protections of doing business in California. For identical reasons, *Belmont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237], a suit involving a contract for the performance of drafting services for a construction project in Maryland, has no bearing on the instant case. Here, the transaction itself was intimately related to California; indeed, the contract executed by respondent specifically provides

that California law shall govern its interpretation and enforcement. Moreover, in connection with the transaction, respondent also signed an instrument by which he and the other purchasers accepted an assignment of a lease for realty located in California. There is no analogy here to cases in which the California domicile of the plaintiff with whom a defendant contracted constitutes the primary connection to the forum state. (Compare *E.I.C., Inc.* v. *Bank of Virginia* (1980) 108 Cal.App.3d 148 [166 Cal.Rptr. 317, 9 A.L.R.4th 654].)

The critical requirement of an invocation by respondent of the "benefits and protections" of state law is met. "We next consider whether it would be fair and reasonable to subject defendant to the jurisdiction of California in light of the inconvenience to him of defending an action in this state, when balanced against the interests of plaintiff in suing locally and of the state in assuming jurisdiction." (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 150.) Several considerations pertinent to this analysis, none of which is independently determinative of the matter, support the exercise of jurisdiction here. As the statutes noted above demonstrate, the forum itself has a strong interest in policing the propriety of transactions transferring ownership in medical corporations. The appellants, the clinic itself, and possibly other witnesses are located in California. No suitable alternative forum is available. Moreover, the issue of respondent's alleged liability appears to be intertwined with that of the other defendant purchasers who have no contested jurisdiction. Denying appellants the opportunity to sue respondent in California will necessarily encourage a multiplicity of actions arising out of an identical set of facts. (*Lundgren* v. *Superior Court, supra,* 111 Cal.App.3d 477, 484.) In respondent's favor we see only the inconvenience of defending an action in an adjacent state. (*Lundgren* v. *Superior Court, supra,* 111 Cal.App.3d 477, 484.) Moreover, as respondent purposefully attempted to obtain a substantial ownership interest in a business operating exclusively in California, he is in no position to assert surprise that it is in this state that he must answer for his conduct. "[T]he defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286, 297 [62 L.Ed.2d 490, 501]; *St. Joe Paper Co.* v. *Superior Court, supra,* 120 Cal.App.3d 991, 998-999.)

The standards we have applied to the relationships among this state, the litigation and respondent exemplify the development of the fundamental fairness principle of *International Shoe, supra,* 326 U.S. 310. It is both reasonable and fair to hold respondent to answer in California for his participation in a transaction the object of which was the transfer of all ownership in a medical practice. The clinic did represent an investment opportunity for respondent; however, it was an opportunity only available to him through his active maintenance of his California medical license. The undisputed evidence

shows respondent purposefully availed himself of the privilege of practicing medicine and holding shares in a medical corporation in this state. It is further evident that upon balancing the other factors pertinent to jurisdiction California is the most appropriate forum for this action.

The order quashing service of summons and complaint on respondent is reversed with directions to deny the motion.

Caldecott, P. J., and Poché, J., concurred.