Filed 3/11/13  Sukumar v. Air Machine Com SRL

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PONANI N. SUKUMAR, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>AIR MACHINE COM SRL, et al.,<br><br>    Defendants and Respondents. | D060743<br><br><br>(Super. Ct. No. 37-2007-00052071-CU-BC-NC) |

APPEAL from orders of the Superior Court of San Diego County, Earl H. Maas, III, Judge.  Affirmed.

Ponani Sukumar and his physical rehabilitation clinic, Southern California Stroke Rehabilitation Associates (together Sukumar), appeal orders dismissing Panatta Sport SRL (Panatta) and Air Machine Com SRL (COM) from the action for lack of personal jurisdiction.  Sukumar contends the trial court erred when it granted the separate motions to quash of Panatta and COM after ruling neither was subject to jurisdiction in California

under a successor liability theory, based on the minimum contacts of their alleged predecessor defendant Air Machine SRL (SRL). Sukumar also maintains both Panatta and COM are subject to specific jurisdiction in California based on each party's own activities/contacts (as opposed to those of SRL) in the forum.

Because we affirm an order granting SRL's motion to quash service for lack of jurisdiction in a separate opinion,[1] we conclude here that Sukumar failed to satisfy his burden to establish jurisdiction over Panatta and COM as successors of SRL. In addition, we also determine Sukumar did not carry his burden to prove either Panatta or COM is subject to specific jurisdiction based on each party's contacts with California. Therefore, we affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Sukumar's Complaint Against Panatta and COM

Sukumar's operative complaint asserted causes of action against Panatta for breach of express and implied warranties, breach of the implied covenant of good faith and fair dealing, violation of Business and Professions Code section 17200 et seq., promissory estoppel and intentional interference with contract.

Against COM, Sukumar alleged causes of action for breach of contract, breach of express and implied warranties, breach of the implied covenant of good faith and fair dealing, violation of Business and Professions Code section 17200 et seq., promissory estoppel and intentional interference with contract.

---

[1] See *Sukumar v. Health Tech Resources, Inc., et al* (Date, 2013, D054985) [nonpub. opn.].

Sukumar alleged in his complaint that Panatta and SRL jointly owned and controlled COM; SRL transferred all rights to manufacture and market its medical grade Air Machine equipment to COM in return for a minority ownership in COM; Panatta's subsequent purchase of SRL's interest in COM was without adequate consideration; and Panatta and COM then refused to honor any warranty and contractual obligations of SRL despite the fact SRL was rendered insolvent and unable to meet its obligations to Sukumar.

All of Sukumar's claims against Panatta and COM derive from Sukumar's contract with Health Tech Resources, Inc. dba Impact Fitness Systems (Health Tech) whereby Sukumar purchased certain exercise equipment from Health Tech, which was manufactured in Italy by SRL. The contract was dated February 26, 2004. Sukumar claimed the exercise equipment was defective and informed Health Tech of the defects "immediately" upon delivery in January 2005.

Panatta's and COM's Motions to Quash

Panatta and COM each moved to quash service of summons based on lack of personal jurisdiction.[2] Panatta and COM contended Sukumar failed to satisfy his burden to show either party was subject to specific jurisdiction in California.[3]

---

[2] There are separate appeals involving Panatta and COM, on the one hand, and SRL, on the other hand, because at the same time the trial court granted SRL's motion to quash it denied the separate quash motions of Panatta and COM. In denying the motions of Panatta and COM, the court ruled they waived their jurisdictional challenge by jointly serving Sukumar with a statutory offer to compromise pursuant to Code of Civil Procedure section 998 ("998 offer") while their challenge to jurisdiction was pending. (SRL did not participate in the 998 offer.) Panatta and COM sought to overturn that

Panatta contended it is an Italian limited liability company that designs, manufactures and repairs sports equipment used in European gyms, sports centers and similar entities. It also claimed to manufacture its products in Italy and market them exclusively in Europe, Asia, Russia and the Middle East. Panatta has never owned or operated any retail stores, manufacturing facilities or warehouses in California; it has never advertised, or maintained an office in California; and it has not owned, used or possessed any real property in California. Panatta is not licensed or registered to do business in California; it has no designated agent for service of process in California; it conducted no business in California "up to and including the entire year of 2004, which is the time period that [Sukumar's] claims arose," and that from approximately May 2005 forward, it has conducted limited business in California with two distributors, which accounted for less than one percent of its overall sales.

In addition, Panatta contended that it and SRL formed COM in 2006, nearly three years after Sukumar entered into its contract with Health Tech, which gave rise to the dispute. Because the superior court ruled SRL was not subject to personal jurisdiction in California, Panatta further contended that it could not be subject to jurisdiction under a successor liability theory.

---

ruling by writ of mandate (*Air Machine v. Superior Court* (July 2, 2010, D054878)). We subsequently granted the writ and remanded the case for the trial court to consider their motions on the merits. Meanwhile, Sukumar separately appealed the order granting the motion to quash of SRL (D054985). (See fn. 1, *ante*.) We stayed D054985 pending the outcome of the quash motions of COM and Panetta, which are the subject of this opinion.

3      Sukumar does not argue that the activities of COM and/or Panatta in California subject either party to general jurisdiction in the forum.

COM argued that it was formed and registered in Italy in November 2006; it is a foreign limited liability company headquartered in Apiro, Italy; its products are manufactured in Italy and are marketed exclusively in Europe; it has never owned or operated any retail stores in California; it has no bank accounts, offices or employees in California; and it has never advertised, owned, used or possessed real property in California.

Regarding its formation, COM noted it was created in 2006 as a result of a joint venture between Panatta and SRL. Initially when it was formed, Panatta owned 51 percent of COM and SRL owned 49 percent, and the goal of the joint venture was to use Panatta's "established European distribution network to better market the 'Air Machine' line of products then owned by SRL." In connection with the joint venture, SRL transferred its intellectual property rights to COM, and after less than two years, when sales of SRL products failed to meet expectations, SRL, in March 2008, withdrew from the joint venture and cashed out its stock in COM for €90,000, leaving Panatta as the sole remaining shareholder of COM.

COM further noted in its motion to quash that it "was and still is a wholly separate company from S.R.L. S.R.L operates in different city, namely, Cesena, Italy. [Citation.] COM operates in Apiro, Italy. [Citation.] COM was always managed and operated independently of S.R.L. [Citation.] COM holds its own Board of Directors' meetings separate and independent from S.R.L. [Citation.] With the exception of one common officer, COM and S.R.L. have completely different officers and directors. [Citation.] COM maintains its own bank accounts, corporate books and records separate and apart

5

from S.R.L. [Citation.] COM markets, distributes, and sells its products through Panatta's distribution network . . . which is separate and independent from S.R.L.'s distribution network."

Moreover, like Panatta, COM also contended that it was not subject to personal jurisdiction in California under a successor liability theory because the superior court ruled SRL did not have sufficient minimum contacts in the forum and because, in any event, Sukumar's claims did not arise from or out of its contacts.

Sukumar opposed the motions to quash of Panatta and COM on the ground that both parties were successors to SRL and thus subject to specific jurisdiction in California based on the minimum contacts of SRL because Panatta did not pay adequate cash consideration to SRL for SRL's interest in COM and, after that sale, SRL was effectively insolvent and unable to meet its obligations to Sukumar.

The Superior Court's Ruling on the Motions

The court granted Panatta's motion. It found that Sukumar could not prove successor liability as to Panatta because the court had already ruled that SRL was not subject to specific jurisdiction. It further found Sukumar did not prove that Panatta assumed the liabilities of SRL. Finally, the court determined Sukumar had not proved specific jurisdiction was proper based on Panatta's contacts with California.

The superior court also rejected jurisdiction over COM based on successor liability for the same reasons it granted Panatta's motion to quash.

The superior court also ruled on Panatta's, COM's, and Sukumar's objections to evidence in connection with the motions to quash, and none of the parties challenge any of the rulings. We therefore do not discuss the specific objections.

DISCUSSION

I

*SUCCESSOR LIABILITY*

Sukumar spends much of his opening brief arguing that the superior court should have exercised jurisdiction over Panetta and COM because they are successors to SRL. We disagree.

"In a case raising liability issues, a California court will have personal jurisdiction over a successor company if (1) the court would have had personal jurisdiction over the predecessor, and (2) the successor company effectively assumed the subject liabilities of the predecessor." (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1120 (*CenterPoint*) [citing among other cases *Ray v. Alad Corporation* (1977) 19 Cal.3d 22, 28, 31].)

In a separate opinion,[4] we affirmed the superior court's order granting SRL's motion to quash for lack of jurisdiction. Because we determined the superior court did not have jurisdiction over Panatta's and COM's alleged predecessor, SRL, Sukumar's contention that the superior court could exercise jurisdiction over Panatta and/or COM under a successor liability theory necessarily fails. As such, we do not reach the second

---

4        See footnote 1, *ante*.

7

prong of the successor liability test: whether the successor effectively assumed the subject liabilities of the predecessor.

## II

### SPECIFIC JURISDICTION BASED ON PANATTA'S AND COM'S RESPECTIVE CONTACTS WITH CALIFORNIA

Sukumar next argues that even if we do not determine that Panetta and COM are subject to jurisdiction in the superior court because they are successors to SRL, he has satisfied his burden of proving they are subject to specific jurisdiction based on their own contacts with California. We disagree.

### A. Limits of Asserting Jurisdiction

"State courts will assert personal jurisdiction over nonresident defendants which have been served with process only if those defendants have such minimum contacts with the state to ensure that the assertion of jurisdiction does not violate ' " ' "traditional notions of fair play and substantial justice." ' " ' [Citations.] 'It is well-established that only " ' "random," "fortuitous," or "attenuated" contacts' " do not support an exercise of personal jurisdiction. [Citation.] In analyzing such issues, the courts have rejected any use of " 'talismanic jurisdictional formulas.' " [Citation.] Rather, " ' "the facts of each case must [always] be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." ' [Citation.]" [Citation.]' " (*CenterPoint, supra,* 157 Cal.App.4th at p. 1117.)

"Minimum contacts" may support either general or specific jurisdiction. (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.) " ' "Specific jurisdiction results

8

when the defendant's contacts with the forum state, though not enough to subject the defendant to the general jurisdiction of the forum, are sufficient to subject the defendant to suit in the forum on a cause of action related to or arising out of those contacts. [Citations.]  Specific jurisdiction exists if:  (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the assertion of jurisdiction would comport with fair play and substantial justice." '  [Citations.]" (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1117, italics omitted; *Helicopteros Nacionales de Columbia v. Hall* (1984) U.S. 466 404, 414 [in determining whether specific jurisdiction exists, courts generally look to the relationship among the defendant, the forum, and the litigation].)

## B.  Burden of Proof and Standard of Review

"When a nonresident defendant challenges personal jurisdiction, the plaintiff must prove, by a preponderance of the evidence, the factual basis justifying the exercise of jurisdiction.  [Citation.]  The plaintiff must do more than merely allege jurisdictional facts; the plaintiff must provide affidavits and other authenticated documents demonstrating competent evidence of jurisdictional facts.  [Citation.]  If the plaintiff does so, the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable.  [Citation.]" (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 428-429.)  "In this analysis, the merits of the complaint are not implicated." (*F. Hoffman-La Roche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 794.)

"Where the evidence of jurisdictional facts is not in conflict, we independently review the trial court's decision. [Citation.] To the extent there are conflicts in the evidence, we must resolve them in favor of the prevailing party and the trial court's order." (*Malone v. Equitas Reinsurance Ltd.* (2000) 84 Cal.App.4th 1430, 1436.) We review the trial court's resolution of factual conflicts under the substantial evidence standard. (*People v. Mickey*, *supra*, 54 Cal.3d at p. 649; *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 585.) Under this standard, "the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact." (*Grainger v. Antoyan* (1957) 48 Cal.2d 805, 807, italics omitted.) " '[S]ubstantial evidence' is . . . evidence . . . 'of ponderable legal significance, . . . reasonable in nature, credible, and of solid value.' [Citations.]" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted.) Such evidence may be in the form of declarations. (*Atkins, Kroll & Co. v. Broadway Lumber Co.* (1963) 222 Cal.App.2d 646, 654.) If supported by substantial evidence, the trial court's resolution of conflict will not be disturbed on appeal. (*Kroopf v. Guffey* (1986) 183 Cal.App.3d 1351, 1356.)

## C. Analysis

Sukumar contends Panatta's contacts with California consist of its efforts to establish a market in California for its products since the late 1990s. Sukumar further asserts Panatta's purchase of SRL was part of these efforts.

Sukumar maintains COM's contacts with California consist of COM representatives emailing Sukumar directly and inviting Sukumar to contact the new COM

10

sales manager for SRL products for assistance with his order. In addition, Sukumar also points to COM's use of Panatta's distribution network, which included two California distributors. COM also apparently took over SRL's website and continues to distribute promotional materials to Sukumar.

Sukumar, however, fails to appreciate that his entire case against Panatta and COM hinges on his purchase of SRL equipment in 2004, which was delivered in 2005. None of Panatta's or COM's contacts with California having anything to do with SRL's products occurred prior to 2006. Sukumar sued COM because he believes it is SRL's successor. Sukumar sued Panatta because he argues it owns COM and assumed certain of SRL's warranty obligations.

On July 31, 2006, SRL and Panatta entered into a joint venture that resulted in the formation of COM as an Italian limited liability company. SRL contributed its trademarks and patents to the joint venture, and Panatta contributed its established distribution network. Sukumar has cited to no evidence demonstrating that either Panatta or COM had any affiliation, involvement, or responsibility relating to SRL's line of fitness equipment or business operations prior to July 31, 2006.

Based on the record before us, it is clear the controversy at issue here (i.e., SRL's defective products) does not arise out of Panatta's and/or COM's contacts with California. (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1117.) Panatta's predispute contacts were unrelated to SRL's product. COM did not even exist at the time the dispute arose. Indeed, Sukumar sued Panatta and COM simply because of their relationship to SRL: COM is the successor of SRL and Panatta owns COM. Panatta's and COM's respective

11

contacts with California prior to and at the time of the dispute are either nonexistent or have nothing to do with the dispute regarding SRL's products.

Citing *Bresler v. Stavros* (1983) 141 Cal.App.3d 365 (*Bresler*), Sukumar argues we may consider postdispute contacts with California to determine if specific jurisdiction exists. Sukumar's reliance on *Bresler* is misplaced.

*Bresler*, *supra*, 141 Cal.App.3d 365 involved an action for breach of contract and other counts arising from the purchase and sale of stock in a medical group organized as a California professional corporation. One of the defendant purchasers, George Stavros, was an Arizona resident. Although he was licensed to practice medicine in California, Stavros declared that he did not intend to practice medicine in California or to take part in the corporation's management, and that he purchased the stock solely for investment purposes. (*Id*. at p. 367.) A subsequent declaration by his attorney, however, acknowledged that Stavros had visited a clinic operated in California by the corporation and had worked in the clinic on one occasion. (*Ibid*.)

The court in *Bresler* stated that Stavros sought the benefits and protections of California securities law by purchasing California securities, he was permitted to purchase stock in the corporation only because he was licensed to practice medicine in California, and that he was subject to detailed regulations concerning transfer of the securities. (*Bresler*, *supra*, 141 Cal.App.3d at p. 369.) The court stated the fact that Stavros had performed medical services at the clinic in California on one occasion, within a week of his signing the contract to purchase stock, also supported the conclusion that he had invoked the benefits of California law. (*Id*. at pp. 369-370.) In addition, the court

noted that the practice of medicine in this state was subject to " 'special regulation' " and a defendant's intentional participation in an activity that is subject to special regulation can support the exercise of jurisdiction. (*Id.* at p. 369, quoting *Hanson v. Denckla* (1958) 357 U.S. 235, 252.) The court concluded that the purchase and sale of the corporation "was intimately related to California," and that Stavros had purposefully availed himself of forum benefits. (*Id.* at pp. 370-371.) The court also determined that the exercise of jurisdiction would be fair and reasonable, in part because California "has a strong interest in policing the propriety of transactions transferring ownership in medical corporations." (*Id.* at p. 371.) The court therefore held that the granting of the motion to quash service of summons was error. (*Id.* at p. 372.)

We struggle to find any aspect of *Bresler*, *supra*, 141 Cal.App.3d 365 that is even tenuously related to the instant matter. In *Bresler*, Stavros's "post-dispute" contact occurred less than a week after he signed the purchase contract. (*Id.* at p. 367.) In contrast, here, Sukumar is trying to establish the requisite contacts, in part, by focusing on contacts that occurred months, and in some cases over a year, after the dispute arose. *Bresler* does not create a rule mandating that we consider Panatta's and COM's post-dispute contacts.

In addition, *Bresler*, *supra*, 141 Cal.App.3d 365 involved facts that are not analogous to the instant matter. Stavros was a licensed California physician and was purchasing stock in a California medical corporation. (*Id.* at pp. 366-367.) Moreover, Stavros's contacts with California concerned the practice of medicine, which is subject to

13

"special regulations."  (*Id*. at p. 369.)  Panatta's attempts to create a California market for its products and COM's postdispute emails to Sukumar are not similar in any way.

In summary, even if we were to accept Sukumar's claim of contacts with California by both Panatta and COM as true, the controversy here did not arise out of any of these contacts.  Therefore, Sukumar has not carried his burden of satisfying the second factor of proving specific jurisdiction.  The court's orders were not in error.

### DISPOSITION

The orders are affirmed.  Panatta and COM are awarded their costs on appeal.

HUFFMAN, J.

I CONCUR:

IRION, J.

14

J. BENKE, dissenting.

I conclude the trial court erred when it granted the separate motions to quash service of summons of respondents Panatta Sport SRL (Panatta) and Air Machine Com SRL (COM) for lack of personal jurisdiction in the action brought by appellants Ponani Sukumar and his physical rehabilitation clinic, Southern California Stroke Rehabilitation Associates (collectively Sukumar). Because I conclude Panatta and COM are subject to jurisdiction in California under a successor liability theory, based on the minimum contacts of defendant Air Machine SRL, an Italian Limited Company (SRL),[1] I would reverse the order granting the motions to quash of Panatta and COM and direct the court to enter a new order denying their respective motions.

### BRIEF OVERVIEW[2]

Sukumar's operative complaint asserted causes of action against Panatta for breach of express and implied warranties, breach of the implied covenant of good faith and fair dealing, violation of Business and Professions Code section 17200 et seq., promissory estoppel and intentional interference with contract.

Against COM, Sukumar's operative complaint alleged causes of action for breach of contract, breach of express and implied warranties, breach of the implied covenant of

---

[1]    Also on this date the majority issued a separate, nonpublished opinion in the related appeal D054985, affirming the trial court's order granting SRL's motion to quash service of summons, to which I also dissent.

[2]    I discuss the relevant jurisdictional facts, *post*, in connection with the issues raised in this proceeding.

1

good faith and fair dealing, violation of Business and Professions Code section 17200 et seq., promissory estoppel and intentional interference with contract.

Sukumar alleged in his complaint that Panatta and SRL jointly owned and controlled COM; that SRL transferred all rights to manufacture and market its medical-grade Air Machine equipment to COM in return for a minority ownership in COM; that Panatta's subsequent purchase of SRL's interest in COM was without adequate consideration; and that Panatta and COM then refused to honor any warranty and contractual obligations of SRL, despite the fact SRL was rendered insolvent and unable to meet its obligations to Sukumar.

DISCUSSION

A.  *Minimum Contacts and Standard of Review*

Courts in California will exercise jurisdiction over nonresidents "'on any basis consistent with the Constitution of California and the United States.'"  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061; Code Civ. Proc., § 410.10 [long-arm statute].)  Accordingly, courts will assert jurisdiction over a nonresident defendant "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not "'violate traditional notions of fair play and substantial justice.'" [Citations.]"  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).)

"When a defendant moves to quash service of process on jurisdictional grounds, the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.  [Citation.]"  (*Vons*, *supra*, 14 Cal.4th at p. 449.)  A plaintiff must meet this

2

burden with competent evidence and establish jurisdiction by a preponderance of the evidence. (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 568.) This may be done through declarations and other admissible evidence; a plaintiff is not required, however, to prove the elements of one or more causes of action to satisfy this burden. (*Nobel Farms, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 657–658; *Aquila, Inc. v. Superior Court*, *supra*, at p. 568.)

Once a plaintiff has demonstrated facts establishing minimum contacts with the forum state, it becomes the defendant's burden to demonstrate the exercise of jurisdiction would be unreasonable. (*Vons*, *supra*, 14 Cal.4th at p. 449.)

A trial court's factual determinations are reviewed for substantial evidence. (*Vons*, *supra*, 14 Cal.4th at p. 449.) But """the question of jurisdiction is, in essence, one of law. When the facts giving rise to jurisdiction are conflicting, the trial court's factual determinations are reviewed for substantial evidence. [Citation.] *Even then, we review independently the trial court's conclusions as to the legal significance of the facts.* [Citations.]""" (*CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1117-1118, italics added (*CenterPoint*); see also *F. Hoffman-LaRoche, Ltd. v. Superior Court* (2005) 130 Cal.App.4th 782, 794 ["[T]he ultimate question whether jurisdiction is fair and reasonable under all the circumstances, based on the undisputed facts and those resolved by the court in favor of the prevailing party, is a legal determination warranting independent review."].)

3

Among other theories, Sukumar contends that Panatta and COM are subject to jurisdiction in California as a result of the contacts of their predecessor, SRL, under a successor theory of liability.

B. *Jurisdiction Premised on Successor Liability*

"In a case raising liability issues, a California court will have personal jurisdiction over a successor company if (1) the court would have had personal jurisdiction over the predecessor, and (2) the successor company effectively assumed the subject liabilities of the predecessor." (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1120, citing among other cases *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28, 31.)

As I discuss in my dissent to the separate majority opinion issued this date, from my review of the entire record in that case, I independently conclude Sukumar met his burden to show that SRL purposefully availed itself of the benefits of doing business in California and that the controversy is related to and/or arises out of SRL's contacts in California. I also conclude that SRL failed to make a compelling case to show the assertion of jurisdiction over it in California would be unfair and unreasonable and that it would be unfair to Sukumar and consumers similarly situated if California did not exercise specific jurisdiction over SRL.

As such, unlike the majority, I conclude for purposes of this dissent that Sukumar has satisfied "prong one" of the *CenterPoint* test to establish jurisdiction over Panatta and/or COM based on a successor liability theory.

Under "prong two" as set out in *CenterPoint*, typically a successor company is liable for a predecessor's actions if (1) there is an express or implied agreement of

4

assumption; or (2) the transaction between the successor and predecessor amounts to a consolidation or merger of the two; or (3) the successor is a mere continuation of the predecessor; or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts. (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1120; see also *Ray v. Alad Corp.*, *supra*, 19 Cal.3d at p. 28.)

Sukumar contends Panatta and COM are subject to jurisdiction based on the second, third or fourth bases or theories set out in *CenterPoint* (i.e., merger; continuation; and/or fraudulent transfer).

1. *Brief Additional Background*

The record shows that like SRL, Panatta manufactured and sold its own line of exercise equipment and product. In 2006, Panatta was actively seeking to increase sales of its exercise equipment in the United States, including in California.[3] Panatta and SRL in July 2006 formed a "strategic association," the terms of which were set forth in a "private contract" translated from Italian into English. A press release issued on Air Machine letterhead noted this alliance was important for the "future" of SRL because the company needed a "great ally" after facing "difficult years of large investments" that were inhibiting its growth potential.

Under the private contract, Panatta and SRL agreed to form a joint venture. SRL agreed to transfer to the joint venture (then named "newco," later to become COM) the

---

[3] Although the record shows Panatta sold exercise equipment in 2005 and 2006 to various distributors located in California, Sukumar does not contend that Panatta's contacts in California were sufficient to subject Panatta to *general* jurisdiction in the state.

5

exclusive rights to its "intangible fixed assets" as set forth in an exhibit (written in Italian) attached to the private contract. Panatta in turn agreed to grant the joint venture the nonexclusive right to use Panatta's "network of agents, both in Italy and abroad, as well as its own service centers," to market and distribute Air Machine equipment and product. The private contract also provided that once the joint venture had taken over the Air Machine brand, SRL could exercise a "put" option within a certain time period that would require Panatta to purchase SRL's interest in the joint venture under a set formula based in part on the earnings of the joint venture (before interest and tax).

As contemplated by the private contract, Panatta transferred to COM the rights to access its distribution network and service centers. Those rights were valued at a little over €2 million. In return, Panatta received a 51 percent share of COM's stock. SRL, for its part, transferred to COM exclusively "its intangible assets (i.e., patents and trademarks owned by SRL[)] and allowed COM access to its list of customers and distributors[,]" which were valued slightly below the rights transferred by Panatta in order to support SRL's 49 percent ownership in COM. COM also retained an SRL officer (Riccardo Piccioli) and various SRL employees (Sebastiano Zannoli, Giacomo Di Leo and Davide Sanson), including its then export manager (Tomas Bilardo).

In addition, the private contract between Panatta and SRL required SRL to change its name to eliminate any reference to the brand name "Air Machine" and precluded SRL from performing for five years "any activity" that competed with COM. SRL also agreed to transfer its internet address to COM so that COM could use and control the "airmachine.it" email domain and URL. COM also adopted SRL's web site as its own.

6

After COM's formation, SRL's 2006 year-end balance sheet showed that its debts substantially outweighed its revenues; that it lost over €1.5 million in production costs in 2006; that its operating costs alone outweighed its revenue; that it owed banks nearly €3 million and suppliers over €1.5 million; and that a divestiture of assets (e.g., such as to COM) would leave SRL more than €4.5 million in debt with no recourse for its creditors, inasmuch as SRL did not transfer any of its liabilities to COM. SRL also reported no bank deposits for the year ending in 2006.

Although in existence less than a year, the record shows that COM in April 2007 marketed the "Air Machine systems" on Air Machine letterhead as a "leader for 20 years in [the] medical and rehabilitation areas," which utilized the "best" technologies and equipment "today." In that particular marketing brochure, other than the name and address of "Air Machine COM srl" listed in very small font at the top of the page, there was no mention that COM was a new entity formed by SRL and Panatta.

The record also shows that in mid-April 2007, COM notified various existing and potential customers about its formation and noted that it would continue and grow Air Machine's "outstanding and innovat[ive]" technology, which had a proven track record "[f]or more than 20 years" in the fitness, health and rehabilitative products industry.

Similarly, a three-page "company profile," dated April 2007, stated in all capital letters at the top on page 1, "AIR MACHINE: since 1985 . . . UNLIKE ANYTHING ELSE," and then went on to discuss the fact that "Air Machine S.r.l. started in December 1985 in Cesena," Italy as a fitness company and has been "operating for more than 20 years" in the fitness market. That profile also stated that "[t]oday, Air Machine operates

7

[in] both [the] fitness and medical market, through its dedicated product lines (both cardio and isotonic)" and that the "Air System" is the "BEST SOLUTION FOR METABOLIC FITNESS." Toward the bottom of page 2 of the company profile, COM introduces itself as "THE FUTURE" and describes the "goal of Air Machine" as "bringing fitness to a wider range of people."

The record shows that various disputes arose between SRL and Panatta shortly after they formed the joint venture that led to COM. Rather than litigate, Panatta and SRL agreed to a settlement (translated from Italian into English) in October 2007, in which Panatta paid SRL €90,000 net to complete the buyout of SRL's interest in COM. Among other terms of the settlement, SRL (i) guaranteed that it had transferred to COM all of its patents and trademarks for Air Machine products and that there existed no other patents, assets, commercial agreements or legal relationships "useful or necessary" to produce Air Machine equipment; (ii) assigned to Panatta the commercial contracts and "whatever else is necessary" for the functioning of the software used in Air Machine equipment; and (iii) agreed to sell to Panatta the molds SRL used in the production of the Air Machine equipment.

The record shows that at year-end 2007, COM valued its intangible assets at €2.006 million, less depreciation.

After SRL sold its 49 percent interest in COM, it appears SRL wound up its business as evidenced by the fact that its registered operating facility was empty and in an "abandoned state," that there was trash collecting outside the building and that a sign on the front door of the building read, "for sale" and "for rent" (in Italian). In addition, the

8

database repository for Italian corporate records and compulsory filings showed no 2007 balance sheet for SRL.

   2. *Governing Law*

   A corporate acquisition constitutes a consolidation or merger for jurisdictional purposes if a plaintiff demonstrates "'(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; [and] (2) one or more persons were officers, directors, or stockholders of both corporations. [Citations.]'" (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121.) "However, it is not dispositive that some of the same persons may serve as officers or directors of the two corporations. The relevant inquiries are whether the two corporations have preserved their separate identities and whether recourse to the debtor corporation is available. [Citation.]" (*Ibid.*)

   "In *Marks* [*v. Minnesota Mining & Manufacturing Co.* (1986)] 187 Cal.App.3d [at page 1436], the trial court set out a checklist for determining whether a de facto merger had taken place that would render the successor company liable for the plaintiff's product liability claim: '(1) was the consideration paid for the assets solely stock of the purchaser of its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller? [Citations.]'" (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121.)

   Nonetheless, "'[t]he crucial factor in determining whether a corporate acquisition constitutes either a de facto merger *or* a mere continuation is the same: whether adequate

9

*cash* consideration was paid for the predecessor corporation's assets.'  [Citation.]" (*CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121, italics added.)  This is because "a sale for adequate *cash* consideration ensures that at the time of sale there are adequate means to satisfy any claims made against the predecessor corporation."  (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 625, italics added.)

      3.  *Analysis*

With regard to Panatta, I believe the primary issue is whether it paid SRL "adequate *cash* consideration" when it purchased SRL's shares in COM for €90,000 a little more than a year after SRL agreed to transfer its intangible assets to COM for a 49 percent ownership in COM.  According to Sukumar, the value of the assets transferred by SRL to COM was a little more than €2 million, as reflected in COM's balance sheet in 2007 and in 2008, and thus he contends the €90,000 cash payment comprised less than 5 percent of the reported value of those assets.

Panatta claims the €2 million valuation for SRL's transfer of its Air Machine patents and trademarks was for purposes of SRL's *capital contribution* to COM and thus was not a true "cash or market valuation" of the SRL contribution.  Panatta also claims that SRL was advised by its own financial advisors that €90,000 was the fair value of SRL's 49 percent ownership stake in COM, as also found by the trial court.  Based on this evidence, as well as SRL's 2006 year-end balance sheet showing that at the end of 2005, SRL set a value of €36,390 for the intangible assets it transferred to COM, Panatta claims the record contains substantial evidence to support the court's finding that Sukumar failed

to carry his burden to show that SRL did not receive adequate cash consideration from Panatta for the sale of its 49 percent share of COM.

From my review of the entire record, I independently conclude the trial court erred when it found Sukumar did not establish that Panatta paid inadequate *cash* consideration for SRL's 49 percent stake in COM. (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121; see also *F. Hoffman-LaRoche, Ltd. v. Superior Court*, *supra*, 130 Cal.App.4th at p. 794 [noting the "ultimate question whether jurisdiction is fair and reasonable under all the circumstances, based on the undisputed facts and those resolved by the court in favor of the prevailing party, is a legal determination warranting independent review."].)

Indeed, the settlement agreement between SRL and Panatta clearly shows there were a series of commercial disputes between those two parties regarding COM and its operations. Those disputes led to a series of payments and setoffs between SRL and Panatta, as contained in their settlement. As a result of those disputes and in return for their settlement, Panatta agreed to pay SRL €90,000 *net* in *cash*. I conclude that the €90,000 sales figure was not the actual *cash* value of SRL's 49 percent interest in COM.

I also conclude Panatta's €90,000 *net cash* payment to SRL was not "adequate *cash* consideration" (see *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121, italics added) to ensure there were "adequate means to satisfy any claims made against the predecessor corporation" (see *Franklin v. USX Corp.*, *supra*, 87 Cal.App.4th at p. 625). I base my conclusion on the evidence in the record that: (i) SRL had "faced difficult years of large investments inside [the] company" and that after SRL sold its interest in COM, it was left with little or no cash assets and over €4.5 million in debt; (ii) SRL's registered operating

11

facility was "for sale" and/or "for rent" and appeared abandoned and empty after the sale; and (iii) on the front end of the transaction, Panatta and SRL valued SRL's contribution of its intangible assets at about €2 million and that COM itself subsequently adopted a similar valuation as well.

That SRL *may* have received independent financial advice regarding the *net* value of its 49 percent interest in COM—after taking into consideration the various commercial disputes between the parties and the offsets to resolve them—does not change my conclusion.[4]  A corporate acquisition may constitute a de facto merger when the successor pays insufficient *cash* consideration for the predecessor's assets, which I conclude is the case here.  (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121.)

Other factors also support my conclusion that SRL received insufficient cash consideration for its interest in COM, including the fact that SRL was paid solely in stock for the transfer of its intangible assets on the front end of the transaction.  (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121 [noting consideration paid only in stock supports a finding of a de facto merger between the successor and predecessor].)

In addition, the record supports the finding that Panatta and COM continued the Air Machine enterprise after Panatta purchased SRL's interest in COM, as reflected by, among other things: (i) the terms of the parties' agreements (i.e., their private contract and

---

[4]    I say *may* because the evidence in the record is less than compelling that SRL was advised by its "own CPA as to the fair value of S.R.L.'s stock in COM" as Panatta and COM argue.  Rather, the record shows this evidence, which the trial court relied on in finding SRL received an "independent financial analysis" regarding the valuation of its interest in COM, was taken from the declaration of Angela Maria Tosti, who at the time was the managing director of *Panatta*.

settlement agreement) where SRL transferred to COM exclusively its patents, trademarks, manufacturing molds and "know how" in the Air Machine brand and its customer/distributor lists; (ii) various press and company releases on Air Machine letterhead stating that Air Machine equipment and product would continue to be manufactured in Italy as it had been for more than *20 years*; (iii) COM's hiring of various SRL employees familiar with the Air Machine equipment and product; (iv) COM's control of the Air Machine website and its internet and email domains; and (v) SRL's agreement to a stringent five-year noncompete clause in connection with the Air Machine brand. (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121 [noting that the purchaser's continuation of the same enterprise of the successor after the sale supports a finding of de facto merger].)

Finally, the record shows that SRL for all practical purposes ceased operations and became effectively insolvent at or near the time it sold Panatta its interest in COM, as evidenced by the "for sale" and/or "for rent" sign on the door of SRL's registered operating facility, which was empty and appeared abandoned, and by its substantial debt. (See *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1121 [liquidation of predecessor is a factor supporting a finding of de facto merger].)

With respect to COM, I conclude many of these same factors support a finding of successor jurisdiction over it based on the "mere continuation" doctrine, an *independent* jurisdictional base. (See *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753 [noting this doctrine applies when, among other factors, all the assets of one corporation are transferred to another corporation, but the latter "does not

13

pay all the first corporation's debts[] and continues to carry on the same business" as the first corporation].)

In sum, after reviewing the entire record and taking into account "'the totality of the unusual circumstances'" (see *CenterPoint*, *supra*, 157 Cal.App.4th at p. 1122) and considerations of "fairness and equity" (*ibid.*), I conclude that Panatta and COM are subject to jurisdiction in California as successors to SRL.[5]  As such, I would vacate the trial court's order granting their separate motions to quash and direct the court to enter a new order denying each party's motion.

BENKE, Acting P. J.

_____

[5]    Because I conclude Panatta (under the de facto merger doctrine) and COM (under the mere continuation doctrine) are subject to jurisdiction in California under a successor theory, unlike the majority I deem it unnecessary to reach Sukumar's alternative contentions to establish jurisdiction (e.g., that Panatta and/or COM are subject to specific jurisdiction based on their own activities/contacts) in the forum state.

14